This is an appeal from a judgment entered on a jury verdict in favor of the plaintiff in a wrongful death action which arose out of a collision between two flatbed tractor-trailer trucks.
David Tate drove a tractor-trailer truck as an employee of Deaton, Inc. (Deaton). At approximately 1:00 a.m. on November 17, 1980, Tate left Birmingham, Alabama, driving a Deaton flatbed tractor-trailer truck northbound on Interstate Highway 59 en route to Knoxville, Tennessee. The Deaton truck was loaded with 40,000 pounds of steel beams, some of which extended more than two feet beyond the forty-foot trailer bed. No warning lights or flags were attached to the protruding steel, and the entire load was secured with only four chains, although the trailer was designed for six chains to be used.
The decedent, James Burroughs, was also travelling north on I-59. Burroughs was driving a tractor-trailer truck for Schuler Industries (Schuler) en route to Greensboro, North Carolina, and was accompanied by another Schuler truck driven by James Gerald Barnett.
By coincidence, the Deaton and Schuler trucks followed the same northern route, taking I-59 north to I-24, through Chattanooga, and then taking I-75 north. At the intersection of I-24 and I-75, approximately 16 miles south of the scene of the collision, the two Schuler trucks joined with two Luck's Food Company trucks driven by Jimmie Howard Brewer and Austin Walker.
During this trip, Tate made three stops. Tate first stopped in Gadsden to tighten the chains securing the steel beams that he was transporting. Approximately 17 miles from Cleveland, Tennessee, Tate stopped again to tighten several loose chains and discovered that a right rear tire was losing air. Although Tate resumed travel on I-75 north, he again pulled off onto the emergency lane of the highway to check his directory for the location of a truck stop in Cleveland where he intended to have the tire repaired. *Page 774 
Although it is unclear whether the collision between the Deaton truck and Burrough's truck happened while Tate was pulling back onto the highway after his third stop, it is undisputed that the collision occurred right over the crest of a hill on I-75 north in the immediate area of mile marker 20, which is just south of the Cleveland Exit 20. In the collision, the cab of Burrough's truck was entangled in the steel beams protruding from the Deaton trailer. Burroughs was impaled by these beams, and died as a result. It is also undisputed that the collision occurred before dawn in driving conditions particularly hazardous due to the mountainous terrain, bumpy roads, rain, and darkness.
The circumstances surrounding the collisions are, however, the subject of much controversy. Tate contends that during his third stop he pulled onto the shoulder of I-75 near the intersection of highways 11 and 64, checked his directory for the location of the truck stop, and then resumed travel northbound on I-75 at an approximate speed of between 40 and 55 miles per hour for a distance of six to eight miles before the collision occurred.
Tate testified that as he topped the hill at mile marker 20, he checked his mirrors and saw traffic on the hilltop behind him two miles away but did not see any vehicles in the valley between these hills. According to Tate, he was in the right lane with his right turn signal on, travelling at a speed of 40 to 55 miles per hour and was slowing down to take Exit 20 to the Cleveland truck stop when he felt a bump from the rear of his truck. Tate, however, travelled 400 to 700 feet down the highway before stopping his vehicle, then stopped partially in the emergency lane. Tate then saw steam coming from the rear of his trailer and discovered that the cab of Burrough's truck was entangled in the steel beams which protruded from the Deaton truck.
The driver of the other Schuler truck and the driver of one of the Luck's trucks contradicted Tate's account of the circumstances surrounding the collision. Both of these drivers, who were travelling directly in front of Burroughs, stated that they saw the Deaton truck near the top of a hill between mile markers nineteen and twenty. According to these drivers, the Deaton truck was either stopped or moving no more than 15 miles per hour, positioned partially in the right lane and partially in the emergency lane. One of the drivers testified that as he passed the Deaton truck, the steel beams were protruding six to eight feet from the rear of the Deaton trailer.
On October 29, 1981, Jean Burroughs, the widow of James Burroughs, filed a wrongful death action on behalf of herself and her three minor children in Jefferson Circuit Court against Deaton, Inc.; Deaton, Inc., Truckloading Division; David Tate; and several fictitious defendants. The complaint alleged that the defendants negligently or wantonly caused the death of her husband in a collision between his tractor-trailer truck and a truck operated by the defendants.
Tate also brought suit against Schuler Industries for his own personal injuries arising out of the collision, and his case was consolidated with the wrongful death action.
In addition to the complaint, the plaintiff also filed on October 29, 1981, certain interrogatories, requesting that the defendants disclose the identity of any persons whom they expected to call as expert witnesses at trial. Deaton never answered these interrogatories, despite a court order requiring such disclosure.[1] The defendants did, however, answer the complaint, denying each material allegation and asserting the defense of contributory negligence as to the negligence count.
Before trial, both Deaton, Inc., Truckloading Division, and Tate were dismissed as parties defendant. Although the case could have been tried under Tennessee law, the parties tried it under Alabama law by consent. At the close of all the evidence, Deaton moved for a directed verdict on *Page 775 
both the negligence and wanton conduct counts. This motion was denied, and the jury returned a verdict against Deaton in the amount of $835,000.00. Deaton's motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, was denied.
The following issues are presented for review: 1) whether the trial court erred in denying Deaton's motions for directed verdict and for judgment notwithstanding the verdict; 2) whether the trial court erred in denying Deaton's motion for new trial on the grounds that a) the verdict was against the weight and preponderance of the evidence and b) the verdict was excessive; and 3) whether the trial court erred in partially excluding the testimony of Deaton's expert at trial.
 I. Motion for Directed Verdict
Deaton contends that there was insufficient evidence to justify submitting the wantonness count to the jury, and that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict.[2]
It is axiomatic that a motion for directed verdict and its corollary motion for judgment notwithstanding the verdict objectively test the sufficiency of the evidence:
 "[U]nder our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered, which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought."
Herston v. Whitesell, 374 So.2d 267, 270 (Ala. 1979). See also
Rule 50, A.R.Civ.P., and Casey v. Jones, 410 So.2d 5, 7 (Ala. 1981).
A directed verdict is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ. See Caterpillar Tractor Co. v. Ford, 406 So.2d 854
(Ala. 1981).
In Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972), this Court defined the elements of wanton conduct:
 "`Wantonness' is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result. . . . . Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster. . . . . Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. . . . . Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference."
288 Ala. at 251-52, 259 So.2d 801-02.
The question of wantonness must be determined by the facts and circumstances of each case. Cooper v. Watts, 280 Ala. 236,191 So.2d 519 (1966).
We believe that sufficient evidence was presented to justify submission of this count to the jury. Although the evidence was in conflict, a jury could have found that immediately prior to impact the following circumstances existed: 1) that the chains securing the steel beams on the Deaton trailer were so loose that the beams had shifted backwards so that six to eight feet of steel protruded from the rear of the trailer; 2) that Tate knew of this dangerous condition but failed to use the two other chains, which the trailer was designed to accommodate, to secure the beams as required by § 393.100 (c)(4)(i) of the Federal Motor Carrier Safety Regulations; 3) that this protrusion, which was not marked by either special warning flags or lights, as required by Code 1975, § 32-5-211, could *Page 776 
have blocked the view of the trailer lights; 4) that the Deaton truck had a low right rear tire which exacerbated the difficulty of travel on the dark, wet, rainy, bumpy, and mountaineous highway; 5) that Tate, despite his knowledge of these conditions, pulled his truck partially onto the highway without using a turn indicator, at a point just beyond the crest of a hill where his view of traffic approaching from the rear was impeded; and 6) that the Deaton truck was either not moving or travelling no faster than 15 miles per hour when Burroughs topped the crest of the hill in the right lane travelling at a normal highway speed.
We therefore hold that the trial court did not err in submitting the wantonness count to the jury.
 II. Motion for New Trial
Deaton argues that the trial court erred in failing to grant its motion for new trial on the grounds that 1) the jury verdict was against the great weight and preponderance of the evidence and 2) the jury verdict was excessive.
The denial of a motion for new trial, based on the challenge that the verdict is against the weight of the evidence, rests largely within the discretion of the trial court, and the trial court's ultimate decision as to such motion will be affirmed unless plainly and palpably erroneous. Williamson v. UnitedFarm Agency of Ala., Inc., 401 So.2d 759 (Ala. 1981). The presumption favoring the correctness of the jury verdict is strengthened, moreover, when the trial court refuses to grant a motion for new trial. Walker v. Cardwell, 348 So.2d 1049 (Ala. 1977).
Based upon our previous recitation of the evidence supporting a finding of wanton conduct on the part of Deaton, we cannot say that the jury verdict was against the weight and preponderance of the evidence. The trial court was therefore correct in denying Deaton's motion for new trial on this ground.
Deaton argues alternatively that in the event the verdict can be supported by the evidence, a new trial is nevertheless warranted because the damages awarded were excessive.
In a wrongful death action brought under Code 1975, §6-5-410, the only damages recoverable are punitive in nature, and the amount thereof is determined by the gravity of the wrong done, the propriety of punishing the wrongdoer, and the need for deterring others from committing the same or similar wrongful conduct. See Estes Health Care Centers, Inc. v.Bannerman, 411 So.2d 109 (Ala. 1982). The amount of damages to be awarded in a wrongful death action is, moreover, largely within the discretion of the jury, and where the trial court refuses to grant a new trial because it does not find the verdict excessive, the favorable presumption attending the jury verdict is strengthened. See Birmingham Electric Co. v. Howard,250 Ala. 421, 34 So.2d 830 (1948).
We cannot say that the award of $835,000.00 in punitive damages was excessive. There is evidence to justify the jury's award as a deterrent to Deaton and other trucking companies which might use the public highways to haul steel beams and other dangerous material without adequately securing the loads. The trial court's denial of the motion for new trial on this ground was therefore proper.
 III. Partial Exclusion of Expert Testimony
Deaton contends that the trial court abused its discretion in partially excluding the testimony of its expert witness at trial. Although Deaton admits that it never formally answered the plaintiff's interrogatories requesting the name of any person whom Deaton expected to call as an expert witness at trial, Deaton argues that the trial court should have allowed its expert, John Sims, to testify as to the issue of the load shift on the Deaton trailer because 1) Deaton says that three months prior to trial, defense counsel informed one of the attorneys for the plaintiff that Sims would be used as an expert witness at trial; 2) *Page 777 
Sims's testimony as to the load shift provided critical rebuttal testimony as to one of the plaintiff's primary theories of liability; and 3) the plaintiff's failure to supplement her answers to Deaton's interrogatories requesting the identity of all witnesses the plaintiff expected to call at trial vitiated any duty to answer on the part of Deaton.
It is undisputed that on October 29, 1981, plaintiff filed interrogatories, requesting that the defendants provide the name of any person whom they expected to call as an expert witness at trial. Approximately seven months later, Tate answered this interrogatory by stating that he did not know whether such an expert would testify at trial. Tate never supplemented this response. Although Deaton and Tate were represented by the same attorney in this action, Deaton never filed any answers to these interrogatories, despite an order compelling such responses.
The trial commenced on May 2, 1983. On the second day of trial, defense counsel informed one of the plaintiff's attorneys that Deaton would call John Sims as an expert witness. When plaintiff's counsel evidenced surprise, counsel for Deaton contended that three months before, he had informed plaintiff's counsel of the identity of this expert.
Plaintiff's counsel, however, stated that he had no recollection of this disclosure. He further stated that it was his custom and practice in a case of this magnitude 1) to depose the opposing party's expert to acquire the facts upon which he based his opinion; 2) to locate and employ a properly qualified rebuttal expert witness; 3) to allow the rebuttal expert to conduct necessary studies; and 4) to prepare such rebuttal expert for trial. Counsel for plaintiff concluded that consenting to a continuance during the middle of the trial to obtain this information would not only disrupt the trial but also impede his effective representation of his client.
Instead of objecting to Deaton's use of this expert at trial, plaintiff's counsel proposed the following compromise: plaintiff would pose no formal objections to Deaton's use of this expert if the expert would testify only to the issue of whether there was adequate lighting on the Deaton truck and not to the issue of whether the steel beams shifted back only after impact. Defense counsel would not agree to this compromise, however, and plaintiff's counsel renewed his objection to the use of the witness at trial. The trial court ordered that Sims be allowed to testify only with regard to the lighting issue. Defense counsel objected to this partial exclusion but at no time made a formal offer of proof detailing the matters to which Sims was expected to testify.
Under Rule 26 (b)(4)(A)(i), A.R.Civ.P., the plaintiff properly filed an interrogatory requesting the identity of any person whom Deaton expected to call as an expert witness at trial. It is undisputed that this interrogatory was properly served upon Deaton; yet Deaton failed to answer, despite a court order, made pursuant to Rule 37 (a), compelling Deaton to answer within 30 days.
Where a party fails to provide or permit discovery ordered under Rule 37 (a) (see Rule 37 (b)(2)), or fails to serve answers to interrogatories after proper service (see Rule 37 (d)), the court in which the action is pending may, under Rule 37 (b)(2), "make such orders in regard to the failure as are just," including the following:
 "(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
 "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
 "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party. . . ."
Rule 37 (b)(2), A.R.Civ.P.
The choice of sanctions to be imposed is largely within the discretion of the *Page 778 
trial court, and this choice will not be disturbed on appeal absent a gross abuse of discretion. See Tucker v. Tucker,416 So.2d 1053 (Ala.Civ.App. 1982).
We cannot say that the trial court's partial exclusion of the testimony of Deaton's expert witness constituted an abuse of discretion.
When faced with the possible Rule 37 (b)(2) sanctions of dismissal, entry of default judgment, or total exclusion of this expert's testimony, the trial court's choice of sanctions, in actuality, represented a fair and equitable compromise where the trial court could have found that the expert was unveiled, much to the opposing party's surprise, midway through the trial. On the other hand, under the trial court's implicit finding that the plaintiff was surprised by this witness, to allow complete testimony from this expert would have necessitated the grant of a prolonged continuance to allow the plaintiff the opportunity to prepare rebuttal testimony, inevitably resulting in a substantial disruption of the trial.
Deaton's contention that the plaintiff's failure to supplement her answers to interrogatories requesting the names of all trial witnesses somehow vitiated its own failure to respond to the plaintiff's interrogatories is without merit. Deaton already knew the identity of the witnesses plaintiff called but had not named by supplementing her list, so no surprise or prejudice is shown.
The judgment of the circuit court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] The attorneys representing Deaton on appeal were not trial counsel.
[2] We decline to adopt the position argued by Deaton on appeal that the mere fact that the front of Burroughs's truck collided with the rear of the Deaton truck established contributory negligence as a matter of law.