BRADLEY, Judge.
This is a case wherein damages are sought for the improper repair of an automobile engine.
Mary McWilliams filed suit against Ray Nelson, doing business as Nelson Repair Shop, for breach of both express and implied warranties, conversion, and fraud in the repair of her automobile engine. Thereafter, Nelson counterclaimed for the amount due for the subsequent repair of her engine and for declaration of a lien upon her automobile, in his possession, for his uncompensated work and labor.
On March 6, 1985 a jury trial commenced. After presentation of all of the evidence, Nelson moved the court to direct *333 a verdict in his favor. The court denied this motion.
Subsequently, the jury returned a verdict in favor of McWilliams against Nelson in the amount of $9,000 and costs. The jury further found for McWilliams on all counts under Nelson’s counterclaim.
On April 5, 1985 Nelson filed a motion for new trial, motion for judgment notwithstanding the verdict, or, in the alternative, a remittitur of the verdict and judgment. After a hearing on this motion, it was denied by the court. Nelson then filed notice of appeal to this court.
The evidence shows that on March 12, 1984 Mary McWilliams took her 1979 Ford Thunderbird to Nelson Repair Shop for engine repairs or an engine replacement. Nelson, operator of the shop since 1954, negotiated with McWilliams. He represented to her that he would replace the engine in her automobile with a rebuilt engine with all new parts for $824. At that time Nelson showed McWilliams a rebuilt motor. Further, he stated to her that although it was not his normal policy, he would guarantee the replaced engine for one year and that he would replace any part that “tore up” within one year.
On March 14 McWilliams paid Nelson $824 and picked up her Thunderbird. Unknown to Mrs. McWilliams at that time, Nelson had rebuilt the engine in her car and put it back in her car. The automobile ran smoothly when she left the shop but before she had driven eight miles the engine overheated. With assistance, the radiator cap was removed and mud-like water poured out. McWilliams stated that she also noticed that several of the engine hoses had been disconnected and plugged with bolts. Immediately after the automobile cooled down, McWilliams drove back to Nelson Repair Shop. Within that short distance the automobile once again overheated and the engine began to make a knocking sound. The next day McWilliams picked up her Thunderbird once again. She was informed that the problems from the day before were due to a loose pulley which had been corrected.
Shortly thereafter, McWilliams once again returned her automobile to Nelson Repair Shop. The valves were rattling, the exhaust was hissing, the oil pressure indicator was glowing, and the engine oil was leaking. It was at that time that Nelson first breached his warranty agreement. He told McWilliams that the oil leak could either be caused by her engine or her exhaust system and that the only way to determine which was to disconnect the exhaust from the engine. He told her, however, that he would authorize such work only if she would buy a muffler from him.
McWilliams testified that her automobile troubles continued until she finally took the automobile elsewhere for an evaluation. On May 7, 1985 she took her Thunderbird to a Ford dealership. The engine was still squealing, and the problems had progressed to such an extent that the automobile would not exceed forty miles per hour. That same afternoon, within two months of Nelson’s replacement, the engine locked and the car ceased running. The next day McWilliams contacted Nelson and the automobile was towed to his shop. As a result, McWilliams’s engine was again rebuilt.
The cost to rebuild the engine for a second time was $425.55. When McWilliams refused to pay, relying on Nelson’s prior guarantee, Nelson refused to relinquish possession of her automobile.
On appeal here, Nelson contends that he did not breach any warranties given to McWilliams. He claims that McWil-liams's automobile problems causing the engine to require subsequent repair were not included in his guarantee. He also claims that McWilliams owed him $425.55 for work and labor and that, therefore, he was legally entitled to possession of her automobile, by virtue of a common-law mechanic’s lien. Consequently, he says that the trial court erred in refusing to direct a verdict in his favor on plaintiff’s complaint and that the jury erred in refusing to award him damages as claimed in his counterclaim. We disagree.
*334 The work performed by Nelson on McWilliams’s automobile and for which he claims a mechanic’s lien was confined to the engine. The first repair job was also limited to the engine.
Nelson’s mechanic testified that the second problem, i.e. a “dropped valve” or a stopped up exhaust system, was probably due to low oil pressure. Furthermore, Nelson himself testified that the part repaired was a component of the engine, and that usually a defective exhaust would not cause this type of problem. Nelson admitted that he guaranteed the rebuilt engine in McWilliams’s car for one year. He also admitted that a disclaimer excepting this type of problem was never discussed with McWilliams. Thus, absent any express disclaimer or noted exception, the evidence supports the jury’s finding that the work performed by Nelson fell within the terms of his warranty.
Since the jury found that Nelson’s work on McWilliams’s automobile engine the second time was covered by the warranty given to her after the first engine repair job, McWilliams did not owe Nelson any money for the second repair job; consequently, there was no outstanding debt due Nelson by McWilliams upon which a mechanic’s lien could attach. See § 35-11-111, Code 1975. The jury rightly refused to find for Nelson on his counterclaim.
Nelson also contends that the trial court erred in denying his motion for a directed verdict. He again argues that the subsequent repairs on McWilliams’s automobile were excluded from his guarantee, given after the first repair job. He further argues that since McWilliams offered no evidence to refute his stated warranty limitations his motion should have been granted. Again, we disagree.
The testimony was overwhelming that Nelson gave McWilliams a one-year guarantee for any defective engine part or problem after the first repair job. Nelson himself, as noted previously, testified that he placed no express limitation on that guarantee.
When a directed verdict is requested, the entire evidence must be viewed in a light most favorable to the non-moving party. Moreover, if there is a scintilla of evidence supporting the position of the party against whom the directed verdict motion is made, so that the case is entitled to submission to the jury, a directed verdict cannot be granted. Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984). In this instance there was more than a scintilla of evidence to support McWilliams’s complaint. Therefore, the trial court properly overruled the motion for directed verdict.
Finally, Nelson argues that the $9,000 verdict contains punitive damages and that the record is void of any evidence to support such an award. Consequently, the trial court erred in not giving him a new trial.
In order for punitive damages to be imposed upon a party, there must have been evidence before the court from which the jury could have concluded that the statements made were reckless, without regard to their truth, or without caring or knowing of their truth, and that the fraud was malicious, oppressive, or gross. Shiloh Construction Co. v. Mercury Construction Co., 892 So.2d 809 (Ala.1980).
The evidence shows that Nelson represented to Mrs. McWilliams that he was going to install a specific rebuilt engine— he had one in his shop that he showed to Mrs. McWilliams — with all new parts. He did not do so. His own mechanic testified that he rebuilt the engine in Mrs. McWil-liams’s car. Nelson also told Mrs. McWil-liams that he was guaranteeing the rebuilt engine for one year and any part that “tore up” would be replaced. When the rebuilt engine failed, Nelson not only did not replace the defective parts but presented Mrs. McWilliams with a bill for the repair to the rebuilt engine and, upon her refusal to pay because she contended such repairs were covered by the guarantee, Nelson kept her car and imposed a mechanic’s lien on it.
Based on this evidence and the other evidence in the record, we hold that the *335 jury could have reasonably concluded that Nelson’s actions were malicious, oppressive, reckless, or gross, and warranted the imposition of punitive damages.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.