SHORES, Justice.
Plaintiff, Janice B. Pugh, appeals from a judgment entered pursuant to a jury verdict in favor of defendant, Larry Ervin Taylor, in a wrongful death action. We affirm.
The evidence produced at trial, which was largely undisputed, reveals the following: On January 24, 1984, defendant Larry Ervin Taylor left his farm in Perdido, Alabama, to carry a piece of farm equipment to sell at an auction in Dothan, Alabama. The journey was to be in excess of 200 miles, taking approximately 6 hours to drive. The piece of farm equipment was an International 830 corn chopper used in Taylor’s farming operations. It was attached to the rear of his pickup truck. It was undisputed that the corn chopper was an oversized vehicle as defined by Code 1975, § 32-9-20. Taylor had no warning devices on either the pickup or the chopper to warn approaching motorists of his oversized load. See Code 1975, § 32-9-20 and § 32-9-29.
On that same day, James Gregory Pugh, plaintiff’s intestate, was operating a fully loaded tractor/trailer log truck on Highway 29 heading southwest toward Brew-ton, Alabama. Near Andalusia, Alabama, Pugh met Bobby Ray Thomas, who was driving a log chip truck headed in the same direction. They stopped, talked, and had something to drink at a local store. At *430 that time, Pugh mentioned to Thomas that his brakes were not “holding like they normally would.” The two trucks then continued together on Highway 29 heading southwest toward the McGowin Bridge in Escambia County, Alabama.
Defendant Taylor had traveled in excess of fifty miles and was traveling in an easterly direction, driving 30 to 35 miles per hour, as he approached the McGowin Bridge. As he approached the bridge, he saw a “narrow bridge” sign. At this sign, the bridge was not visible, because of a curve in the road. As Taylor entered the bridge, his truck was in the right lane of traffic, but his chopper extended into the left lane. Taylor was unable to see the log and chip trucks approaching from the west until he passed under the bridge’s steel spans.
The first truck Taylor saw approaching him on the bridge was the chip truck driven by Thomas. Taylor looked into his side-view mirrors and maneuvered his truck and his chopper as far as he could to the right. He testified that he was able to get both within his lane of travel. When he looked back up, he saw the second truck, driven by Pugh, come out from behind Thomas’s chip truck and into his lane of travel. Taylor started blinking his headlights and decelerating. The Pugh truck started back into its own lane, got partially in, then came back into Taylor’s lane of travel. Pugh never moved back into his own lane prior to the collision.
Thomas and Pugh both had citizen’s band (“CB”) radios in their trucks. Thomas testified that when he saw the defendant’s pickup and corn chopper, he told Pugh over his CB radio that they needed to stop. Thomas then applied his brakes. At that point, Pugh said over his CB to Thomas, “Oh my God, I can’t stop,” and moved into the left lane, to keep from hitting Thomas. Pugh’s speed was between 50 and 70 miles an hour at the time of the incident.
The defendant testified that Pugh’s truck appeared to be going faster than Thomas’s truck, which it was passing. In order to avoid hitting the speeding truck, the defendant testified that he attempted to turn his truck and chopper into Thomas’s lane of travel; however, before he could get both the pickup and chopper completely into the other lane, Pugh's truck struck the right front edge of the chopper.
The impact occurred in what had originally been the defendant’s lane of travel. The impact caused the pickup truck to come to a complete stop. Thomas was able to stop his chip truck and avoid a head-on collision with the defendant. Pugh’s log truck traveled another 61 feet after impact before striking the bridge railing. It then continued down the bridge, knocking down 106 feet of railing, before falling to the ground and bursting into flames. Pugh died of burns he received from the fire. There were no skid marks.
The width of the defendant’s corn chopper was 10 feet, 3 inches, the chip and log trucks were both 8 feet wide, and the roadway on the bridge between the white lines was 18 feet, 2 inches wide. There was an additional 10 inches on either side between the white line and the edge of the bridge abutment. In other words, while the total vehicle measurements were 18 feet 3 inches, there was maneuvering space of 19 feet, 10 inches.
Janice B. Pugh, Pugh’s widow, filed a complaint against Taylor, alleging that Taylor’s conduct was negligent and wanton and caused the wrongful death of her husband on January 24, 1984. Taylor denied the plaintiff’s allegations and contended that the deceased was contributorily negligent.
The case was tried to a jury and at the conclusion of all the evidence, the trial court granted the defendant’s motion for directed verdict as to the claim for wantonness. The jury returned a verdict in favor of the defendant, Taylor, on the remaining count of negligence. The court entered a judgment for the defendant and this appeal followed.
Two issues are presented for our review. First, plaintiff contends that the trial court erred in directing a verdict on the wantonness count. Second, plaintiff contends that the trial court erred when it failed to rule *431 as a matter of law that the width exemption found in Code 1975, § 32-9-22, for “implements of husbandry temporarily propelled or moved upon the highways” was inapplicable to Taylor under the facts of this case.
Plaintiff contends that the present case is analogous to Smith v. Bradford, 475 So.2d 526 (Ala.1985), where this Court held that the trial court erred in granting the defendant’s motion for directed verdict on the issue of wanton conduct. In Smith, a state trooper was traveling between and 80 and 90 miles per hour in order to reduce the distance between his patrol car and a speeding vehicle. He did not turn on his blue lights or siren as required by law, Code 1975, § 32-5A-7.
The trooper testified that while he was pursuing the speeding vehicle, he saw reflectors approximately 300 to 500 feet in front of him, apparently in the right lane of traffic where he was traveling. He then immediately moved over to the left innermost lane, and when it appeared that the reflectors were moving into the left lane, he applied his brakes. His vehicle skidded approximately 265 feet in the left lane. The trooper, believing that he had passed the reflectors, partially released his brakes. He traveled 96 feet and then struck a 13-year-old boy on a bicycle. The boy died four days later.
In Smith, this court restated the elements of wanton conduct, quoting from Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972), and Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984), as follows:
“ ‘ “Wantonness” is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result. ... Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster.... Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand_ Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference.’ ”
475 So.2d at 528.
In Smith, the plaintiff argued that “the trooper gave no warning of his impending arrival upon the unsuspecting child, he did not activate his spot light to see if he had actually passed the moving reflectors, and he did not even attempt to stop his vehicle because he assumed he had passed the bikes.” 475 So.2d 529. We agreed with the plaintiff “that a jury could have found he was recklessly indifferent to the consequences.” Id. at 529.
We also stated in Smith that the question of whether there was proof of wantonness must be determined by the facts and circumstances of each case. See, Deaton, Inc. v. Burroughs, supra. After a careful review of the record in the present case, we agree with the trial court that the plaintiff failed to produce evidence that defendant Taylor, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omission produced the injury. Roberts v. Brown, 384 So.2d 1047 (Ala.1980).
Plaintiff next contends that the trial court erred when it charged the jury on the exemptions found in Code 1975, § 32-9-22. Plaintiff contends that by so charging, the trial court “indicat[ed] to the jury that Taylor was not required to comply with the width limitation and rules and regulations for the movement of oversized loads found in Sections 32-9-20 and -29, Code of Alabama (1975).” This, plaintiff contends, was erroneous and prejudicial to her case.
Code 1975, § 32-9-22(a), reads as follows:
“(a) There shall be exempt from the provisions of this article trucks, semitrailer trucks or trailers owned by the United States, or any agency thereof, the state of Alabama, or any county or city, or incorporated town; nor shall the provisions of this article apply to implements of husbandry temporarily propelled or moved upon the highways; nor shall the provisions of this article *432 apply to trucks, semitrailer trucks, or trailers used exclusively for carrying 50 bales or less of cotton.” (Emphasis added.)
In State Department of Public Safety v. Scotch Lumber Co., 293 Ala. 330, 302 So.2d 844 (1974), the lumber company filed an action to enjoin the state from enforcing the truck weight statute against log trucks operating on the public highways. The circuit court granted a preliminary injunction, and this court reversed. We held that although a truck specifically designed for hauling pulpwood from the point of severance to the mill was an “implement of husbandry” within the meaning of § 32-9-22(a), it did not meet the other requirement of being “temporarily propelled or moved upon the highways”; thus, it was not exempt from the truck weight and width laws.
“Even though these trucks are implements of husbandry, we are of the opinion they are not exempt from the truck weight law under the facts of this case. The key words in § 90 [now § 32-9-22(a)] are ‘implements of husbandry temporarily propelled or moved.’ It is reasonable to conclude that when the legislature enacted § 90, it envisioned that in the operation of farming it is often necessary to move vehicles or machines used in farming from one farm to another, or from one area to another, covering a limited distance. And, it is often necessary that they move or be moved for a brief period of time upon a public highway.”
293 Ala. at 332, 302 So.2d at 846.
The evidence in the present case shows that Taylor was not on the highway with his corn chopper for a brief period of time or for a short distance. He was intending to travel some 200 miles, which would take approximately 6 hours. Furthermore, the purpose of the trip was to sell his chopper at an auction. We agree with the plaintiff that as a matter of law, Taylor did not come within the exception found in § 32-9-22(a), and that the trial court erred in submitting that statutory exemption to the jury for its consideration. However, to warrant reversal, the error must be considered prejudicial. Underwriters National Assurance Co. v. Posey, 333 So.2d 815 (Ala.1976). Under the facts of this case, no reasonable factfinder could conclude that the failure of Taylor to get a permit and place warning devices on either the pickup or the chopper to warn approaching motorists of his oversized vehicle, as provided for in Code 1975, § 32-9-20 and § 32-9-29, proximately caused this accident. Under the evidence presented at this trial, a jury could only conclude, as this jury did, that the proximate cause of the accident was Pugh's brake failure and his driving his runaway truck in the wrong lane of traffic.
Under the particular facts of this case, we find that the error was harmless, and, therefore, does not warrant a reversal of the case. A careful review of the record leads us to conclude that the jury’s verdict was not influenced by the contested charge.
Thomas testified that prior to the accident Pugh stated that his brakes were not functioning properly. Then immediately prior to the accident, Pugh, upon being told by Thomas to slow down and stop, said, “Oh my God, I can’t stop.” As a result, Pugh passed Thomas on a narrow bridge at approximately 50 to 70 miles an hour. The center line was a double yellow line prohibiting passing. No skid marks were found.
Taylor’s lack of proper warning devices on his oversized chopper did not cause this unfortunate accident. Furthermore, the evidence indicates that Pugh was negligent in continuing to drive a loaded log truck after experiencing brake difficulties. The contributory negligence of the deceased defeats recovery. Ross v. United States, 640 F.2d 511 (5th Cir.1981).
Having found no error warranting reversal, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.