This is an appeal by the defendant, Teresa Collins, from a judgment for the plaintiffs, Tony G. Shelley, a minor who sued through his father and next friend Gary Shelley, and Gary Shelley individually, based upon a jury verdict in an action based upon alleged negligence and wanton conduct. We affirm.
The action arose out of an automobile accident at the intersection of Ross Clark Circle and Old Taylor Road in Dothan. Ross Clark Circle is a four-lane highway divided by a median between eastbound and westbound traffic, with two lanes in each direction. Each traffic lane is approximately 20 feet in width.
Defendant left her home on Old Taylor Road, about one-half mile from the accident scene, driving a Datsun 210 automobile owned by her father but provided for her use. She was familiar with the intersection and testified that she stopped at a stop sign for traffic approaching it. There were no obstructions at the intersection, and the day of the accident was a clear day. Her radio and air conditioner were on, and the windows were up. The defendant testified that, seeing no traffic, she proceeded across the intersection. She could not remember whether she had stopped in the median or had proceeded completely across Ross Clark Circle and onto Old Taylor Road when her automobile was struck.
Plaintiff Tony Shelley testified that he was driving a 1977 Dodge Colt automobile approximately 30 to 50 m.p.h. in an easterly direction in the outside lane of Ross Clark Circle immediately before the collision. The intersection was unobstructed. As he approached the intersection, he said, defendant's automobile "flashed right in front of me and on a minute reaction, I embraced myself on the steering wheel and I slammed on brakes, but I caught her in her side and she caught me in the front." According to Tony Shelley, the defendant was around 10 to 15 feet in front of him when he first saw her, and the impact occurred in his lane of traffic.
A police officer, Robert Armstrong, testified concerning his investigation and the physical evidence at the scene establishing the point of impact:
 "Q. And would you tell us what steps you used to make a judgment or determination as to the point of impact in this particular wreck scene?
 "A. The position that — of course, point of impact is approximate, but the position of glass from the vehicles, some scratch marks on the pavement, of course, glass would have been thrust type-glass, would have been thrust damage, it would have scattered from the point of impact, scratch marks would have begun at the point of impact.
 "Q. All right. And would you tell us approximately where the scratch marks were located that you observed at this scene?
 "A. There were very few of them, but they were in the inside through-lane — I mean, the outside east-bound through-lane, excuse me.
 "Q. All right. That was of the Ross Clark Circle?
"A. Yes, sir."
Count I of the two-count complaint alleged negligence and wanton conduct on the part of Teresa Collins in the operation of her automobile, while Count II alleged that Collins negligently or wantonly failed to avoid a collision with Tony's automobile. Both counts alleged serious bodily injury as a proximate result. Plaintiff Gary Shelley *Page 1360 
claimed damages for loss of services and claimed medical expenses. The defendant's answer denied liability and alleged contributory negligence. At the conclusion of plaintiffs' case and again at the conclusion of the entire case, defendant moved for a directed verdict on plaintiffs' wanton conduct claims. The trial court denied each motion. The jury returned for the plaintiffs a verdict of $47,371.77, and judgment was entered thereon. The defendant's post-trial motion for J.N.O.V. or new trial was denied, and this appeal followed.
Defendant presents four issues for review:
1. Whether the trial court committed reversible error in denying defendant's motion for directed verdict on the claim of wantonness.
2. Whether the trial court committed reversible error in permitting the plaintiffs to strike their claim for punitive damages after the court had stated to the jury that there was a claim for punitive damages.
3. Whether the trial court committed reversible error in refusing to grant defendant's requested jury charge on an alleged forfeiture of the right-of-way by the plaintiff driver.
4. Whether the trial court committed reversible error in its charge regarding damages for loss of earnings and loss of services.
 I.
Familiar principles on the first issue were recited inSmith v. Bradford, 475 So.2d 526, 528 (Ala. 1985):
 " '[A] motion for directed verdict and its corollary motion for judgment notwithstanding the verdict objectively test the sufficiency of the evidence:
 " ' "[U]nder our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered, which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought." '
 "Herston v. Whitesell, 374 So.2d 267, 270 (Ala. 1979). . . .
 " 'A directed verdict is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ. . . .' "Deaton, Inc. v. Burroughs, 456 So.2d 771, 775 (Ala. 1984).
 "The question of whether there was proof of wantonness must be determined by the facts and circumstances of each case, 456 So.2d at 775, citing Cooper v. Watts, 280 Ala. 236, 191 So.2d 519 (1966). In considering the question as to whether there was evidence from which the jury could find for Smith on the wantonness count in this case, we must consider the evidence most favorable to Smith. Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448 (1965)."
That opinion also included the definition of wantonness:
 " 'Wantonness' is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result. . . . Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster. . . . Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. . . . Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference."
475 So.2d at 528-29 (quoting prior cases).
Applying the evidence most favorably for plaintiffs, we find at least a scintilla of evidence of wantonness on the defendant's part. Ross Clark Circle is a major traffic artery, and there were no obstructions to visibility at its intersection with Old Taylor Road at the time in question. Each lane of travel is approximately 20 feet wide, and the two lanes on each side are separated by a median of approximately the same width. There is some evidence *Page 1361 
that defendant was travelling at between 20 and 25 m.p.h. when the accident occurred. If, as Tony Shelley testified, defendant's automobile "flashed right in front" of him at that speed, having travelled through three lanes of traffic and the median, it is reasonably inferable either that defendant did not stop at the stop sign before entering Ross Clark Circle, or that, if she did, she sped into the Circle and across the median, disregarding oncoming traffic. Indeed, defendant testified that she never saw Tony's automobile; yet according to Tony, the collision occurred in the outside lane, i.e., the ane farthest from defendant's point of entry into Ross Clark Circle. There having been no obstructions, and visibility having been good at the time, defendant's operation of her vehicle could reasonably be viewed as evidence of "reckless indifference to the knowledge that such omission would likely result in injury to another."Bishop v. Poore, 475 So.2d 486 (Ala. 1985).
 II.
Following its instructions to the jury on the law of negligence and wanton conduct, the trial court had proceeded to instruct the jury on damages, when the following occurred:
 "Now, the plaintiff, Tony Shelley, claims as damages against the defendant certain elements of damages. He is claiming medical expenses, the impairment of his ability to earn and also physical pain and suffering.
 "Now there are two types of damages. One is compensatory damages. Those are the items of damages that I just named to you. There is also a claim of punitive damages. Let me explain to you the difference between compensatory damages and punitive damages. Compensatory damages are actual damages suffered by an injured or damaged party. The purpose of awarding compensatory damages is to fairly and reasonably compensate an injured party for a loss or injury —
 "MR. HORNSBY: May we approach the bench. I'm sorry to interrupt you, Judge.
"THE COURT: You may.
"(Bench conference, off the record.)
 "THE COURT: I made the statement that the plaintiff was claiming punitive damages against the defendant. And the attorney for the plaintiffs has made it clear to me that they are not claiming punitive damages. Their only claim is for compensatory damages. And as I was saying, the purpose of awarding compensatory damages is to fairly and reasonably compensate an injured party for a loss or injury sustained. Compensatory damages are intended as money compensation toward a party wronged, in order to compensate him or her for his injury or other damages which have been inflicted as a direct or proximate result of a wrong complained of." (Emphasis added.)
The trial court then proceeded to instruct on compensatory damages.
Defendant argues that the trial court did not instruct the jury that it could not award punitive damages, that is, that the trial court did not take the issue of punitive damages away from the jury.
We respectfully differ. Reading the instructions given to the jury following plaintiffs' announcement, it is clear that the trial court limited plaintiffs' recovery to compensatory damages, as shown above. Indeed, notwithstanding the wantoness count, plaintiffs did not state a claim for punitive damages in the ad damnum clause of their complaint. The jury rendered a verdict in favor of Gary Shelley in the amount of $7,371.77, which is the exact sum proved as medical expenses incurred by him in the treatment of his son, and the $40,000 verdict in favor of Tony Shelley was substantially less than the combined amount ($75,000) sought by plaintiffs in their complaint.
Moreover, if defendant considered the trial court's instructions misleading or confusing, then explanatory instructions should have been requested. Feazell v.Campbell, 358 So.2d 1017 (Ala. 1978). This was not done, but we, nevertheless, find no error in the trial court's instructions. *Page 1362 
 III.
Defendant contends that the trial court erred in refusing certain requested instructions pertaining to forfeiture of the right-of-way to a vehicle approaching or in an intersection. The plaintiffs maintain, on the other hand, that these refused charges were substantially covered by the following oral charge:
 "Now, the driver of a motor vehicle upon a public highway is under a duty to exercise reasonable care to avoid inflicting injury or damage upon others who may be lawfully using the same public highway. Reasonable care means such care as a reasonably prudent person would have exercised under the same or similar circumstances. A driver of a motor vehicle must keep a lookout for those who are using the highway and must exercise due care to anticipate the presence of others upon the highway. A motor vehicle driver is chargeable with knowlege of what a prudent and vigilant operator would have seen and is negligent or contributorily negligent if he fails to discover a vehicle which he could have discovered in time to avoid the injury. A driver is also negligent or contributorily negligent if he sees a vehicle located in a dangerous position upon a highway and does not then exercise due care to avoid the injury or damage.
 "A person operating a motor vehicle on the public highway or street has a right to assume that other persons also using the highway or street will obey the law and also the rules of the road relating to such use. And he has the right to proceed on the assumption until the contrary is clearly evident to him or by the exercise of reasonable care should have been clearly evident to him. Excuse me, let me go back and say, a person has the right to assume that another person operating a motor vehicle upon a public highway or street will obey the law and the rules of the road and he has the right to proceed on such assumption until the contrary is clearly evident to him or by the exercise of reasonable care should have been clearly evident to him."
We note also that the trial court added the following to its oral charge:
 "The Court charges the jury that if you are reasonably satisfied from the evidence in this case that the plaintiff was guilty of the slightest negligence which proximately contributed to his injuries and damages, then you cannot find for the plaintiff in this case.
 "The Court charges the jury that there could be no recovery in this case based on negligence for any injury proximately caused by the mutual negligence of both parties. If the plaintiff, by the exercise of ordinary care, under the circumstances, might have avoided the consequences of the defendant's negligence, but did not, the case is one of mutual negligence, and the law will neither cast all consequences upon the defendant, nor will it attempt any apportionment thereof."
Accordingly, we hold that the requested instructions were substantially covered by the trial court's oral instructions.United States Fidelity Guaranty Co. v. Jones,356 So.2d 596 (Ala. 1977).
 IV.
The trial court charged the jury on loss of earnings and earning capacity:
 "Another element of damages is loss of earnings. In determining an amount of damages for loss of earnings, you should consider any evidence of the plaintiff's earning capacity, his earnings, the manner in which he ordinarily occupied his time before the injury, his inability to pursue his occupation and determine what he was reasonably certain to earn during the time so lost had he not been disabled.
 "Another element of compensatory damages that is being claimed is earning capacity. In arriving at the amount of your award for any loss of future earnings or earning capacity, you should consider what the plaintiff's health, physical ability and earning power or capacity were before the accident and what they are now, the nature and extent of his injuries and whether or not these are reasonably certain to be permanent. Or, if not permanent, the extent of their duration. All to the end of determining first the effect, if any, of his injury upon *Page 1363 
his future earnings or earning capacity. And secondly, the present cash value of any loss of future earnings or earning capacity which you are reasonably satisfied from the evidence in this case that the plaintiff is reasonably certain to suffer in the future as a proximate result of the injury in question."
The trial court distinguished Tony Shelley's claim for lost earnings (as an adult) from his father's claim for lost services:
 "Now, if you find for the plaintiff, Tony Shelley, then you must consider the claim of his father, Gary Shelley, for damages, for medical expenses, for care and treatment for his son, Tony Shelley, and for loss of his services while Tony Shelley was a minor, in other words, while Tony Shelley was under nineteen years of age.
 ". . . If you are reasonably satisfied from the evidence that Gary Shelley lost the services of his son, Tony Shelley, while Tony Shelley was a minor, as a proximate result of the negligence of Mrs. [Teresa Collins] Williams, then Gary Shelley would be entitled to recover an amount which would reasonably and fairly compensate him for the reasonable monetary value of such services."
The accident occurred when Tony was 17 years of age. At the time of trial, he was 20 years of age. Thus, both he and his father had a claim for loss of earnings. In their complaint, plaintiffs alleged that Tony Shelley sustained permanent disability as a proximate consequence of the occurrence. Such an allegation is sufficient to imply impairment of earning capacity. Bishop v. Poore, 475 So.2d 486 (Ala. 1985). Assuming that the fourth issue was preserved by proper objection, we find no error in the trial court's instruction.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.