This is an appeal from a judgment upholding the plaintiffs' jury verdict in a wrongful death action.
Ronnie Cowan (age 26 at the time of his death) was born severely retarded (both physically and mentally), blind, mute, and virtually deaf, and remained all of his life totally dependent upon others. Upon the death of his parents, Ronnie's sisters (Plaintiffs) had him placed, as a ward of the state, in a state adjustment center. He was later transferred to a nursing home in Montgomery, and from there he was transferred to the Estes Health Care Center, where he resided at the time of the incident in question.
On approximately December 22, 1978 (there are no records to pinpoint the exact date), an Estes nursing aide left Ronnie in an empty bathtub in the presence of another retarded patient. The aide left the room to gather some necessary articles to complete Ronnie's bath and his clothing and bed change, and to take a younger patient to the day room. Upon her return to the bathroom the aide found the tub in which Ronnie was sitting partially filled with hot water and the hot water still running into the tub.
The aide promptly removed Ronnie from the tub, but it was not discovered for several hours that Ronnie had been burned badly enough to cause blisters over a portion of his lower body. *Page 111 
The attending nursing home physician ordered that, in addition to medicinal treatments, Ronnie be given a great deal of nutrition and that he be forced to take fluids. When Ronnie failed to take in sufficient amounts of fluid to improve his condition, he was transferred to Jackson Hospital and Clinic on December 28, where he died on December 30.
Plaintiffs, as joint administratrices of Ronnie's estate, instituted a wrongful death action against Estes. Subsequently, Jackson and two individual physicians (one associated with Estes and the other associated with Jackson) were added by amendment as parties defendant. Plaintiffs dismissed the nursing home doctor and the trial proceeded against the other three Defendants.
At the close of Plaintiffs' case, Defendants' respective motions for directed verdict were argued and granted as to the issue of wantonness but were denied with respect to the issue of negligence. A jury verdict was returned against Estes and Jackson with an award of $500,000. From the order denying their respective motions for new trial or, in the alternative, J.N.O.V., both Defendants appeal.
Of the multiple issues raised, two are sufficiently preserved and presented by both Defendants to merit our consideration:
 1. The failure of prospective jurors to respond to certain questions on voir dire; and
 2. The propriety of certain portions of Plaintiffs' counsel's closing argument.
Defendant Estes raises one additional issue: The admissibility of certain evidence relating to the condition of its premises. Defendant Jackson also raises one additional issue: The failure of the trial judge to give Jackson's requested written jury instruction No. 5.
 VOIR DIRE EXAMINATION OF JURORS
This issue is properly raised in the context of an adverse ruling of the trial court following an ore tenus hearing on Defendants' motions for new trial.
Two points are raised: 1) relating to Juror Diggins; and 2) relating to Jurors Diggins and Weekly.
Mr. Diggins did not respond to the question: "Has any member of the jury panel ever been a defendant in a law suit?" During the hearing on Defendants' motions for new trial, Mr. Diggins testified that a suit had been filed against him by a hospital, that his wages had been garnisheed, and that he had ended up in bankruptcy. He testified further that he was named as a defendant in a law suit arising out of an automobile accident which he settled with a cash payment to the plaintiff.
By way of explanation for his failure to respond to the voir dire inquiry, Juror Diggins stated: "My idea of a law suit was just like what I sat here and looked at. . . . [W]hat I thought it was, was go into court and defending myself; that was my idea of a law suit. That is the reason I said that."
The standard against which the trial court tests alleged improper responses to voir dire inquiries is set out in Freemanv. Hall, 286 Ala. 161, 238 So.2d 330 (1970):
 "We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant." Freeman, at 286 Ala. 166.
Furthermore, on appeal the trial judge's decision whether the juror's answers constituted probable prejudice "is subject to review only for abuse of discretion." Freeman, 286 Ala. at 166.
The Freeman decision goes on to hold:
 "This rule comports with logic and common sense. The trial judge heard the questions posed on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion. His conclusions are then subject to our review for abuse of discretion." Freeman, 286 Ala. at 167. *Page 112 
Here, the trial court's decision is questionable only in the context of Juror Diggins's response to the "defendant in a law suit" question. The trial judge, in exercising his discretion not to grant a new trial, correctly considered the use and definition of the term "law suit." While taking into consideration that "law suit" is clearly understood by members of the legal profession, the court was well within the bounds of its discretion to take into account that this term is subject to other interpretations by the lay person and to accept what Juror Diggins maintained was his understanding of a "law suit."
The second point raised under this issue relates to the failure of Jurors Diggins and Weekly to respond to the inquiry: "Does any member of the jury panel have a close relative — by that, a parent, brother, sister, child — who is at this time or has been in a nursing home or an institution of that kind?"
The testimony of both Jurors Diggins and Weekly, at the hearing on Defendants' motions for new trial, revealed that each juror did have a relative in a nursing home at the time of the trial. We note that in both cases the relative institutionalized was a grandmother. The lawyer's voir dire inquiry, however (to which both men gave an original negative response), was qualified by the definition of "close relative" as a "parent, brother, sister, child." In view of the narrowed scope of the question as posed, we can find no reversible error in the trial court's acceptance of the answers given by Jurors Diggins and Weekly.
Moreover, the trial judge was justified in concluding that neither of these negative responses, in the context given, resulted in probable prejudice to the Defendants. Cf., Ex parteLedbetter, 404 So.2d 731 (Ala. 1981).
 PROPRIETY OF CLOSING ARGUMENTS
Defendants further urge our reversal of the trial court's decision because of the allegedly improper and prejudicial nature of Plaintiffs' counsel's closing argument. Specifically, Defendants objected to that portion of the argument wherein Plaintiffs' counsel stated:
 "How valuable and how precious is human life? Ladies and gentlemen, how valuable and how precious are the hostages over in Iran? How much would this country pay to have those individuals back?
". . .
 "Would any amount of money suffice for those lives? How much are the lives of all the Cuban refugees that our tax dollars are going to support, how much are they worth? They are human beings, also."
 ". . . [A]nd I submit to you that the life that Ronnie Joe Cowan had during his lifetime was worth as much to him as mine is to me and any other individual in the world is to them. And he had the right to live his life in the fullest and best way that he would. And, but for the fact that they burned him, and but for the fact that the treatment in Jackson Hospital, and the fact that that boy was dehydrated, I submit to you that he would be here today."
These statements, Defendants claim, amounted to an argument for an award of damages compensatory in nature rather than punitive.
It is settled that under Alabama law (Code 1975, § 6-5-410) the only damages recoverable in a wrongful death action are punitive in nature, determined by the gravity of the wrong done, the propriety of punishing the wrongdoer, and the need for deterring others from committing the same or similar wrongful conduct. Merrell v. Alabama Power Company,382 So.2d 494 (Ala. 1980); Airheart v. Green, 267 Ala. 689, 104 So.2d 687
(1958).
Furthermore, argument of counsel appealing to the jury for an award of compensation for an individual's death as measured by the material worth of his or her life is improper. Hardin v.Sellers, 270 Ala. 156, 117 So.2d 383 (1960). *Page 113 
The very purpose of punitive damages, then, in a wrongful death context, rests upon the Divine concept that all human life is precious. The language of § 6-5-410 is that recovery may be had for "such damages as the jury may assess." The judicial interpretations of our wrongful death statute have developed this principle: While human life is incapable of translation into a compensatory measurement, the amount of an award of punitive damages may be measured by the gravity of the wrong done, the punishment called for by the act of the wrongdoer, and the need to deter similar wrongs in order to preserve human life. The wisdom of this principle is all too dramatically exemplified by the station in life of Ronnie Joe Cowan. See Geohagan v. General Motors Corporation, 291 Ala. 167, 279 So.2d 436 (1973).
We hold, then, that the trial court correctly ruled that compensation was not the measure of damages sought by Plaintiffs' counsel when he referred to the value of human life in his closing argument — it is indeed the value of life itself upon which punitive damages are premised. This must be the rule in view of the extremely difficult responsibility resting upon a jury in a wrongful death action: to equate the wrong done — the wrongful taking of human life — with a monetary award.
In the instant case, we find no evidence that the jury retired with the attitude of awarding compensatory rather than punitive damages. On the contrary, the trial judge, in his oral charge, was careful to exclude any indication of compensation in the event the jury should make an assessment of damages. This was clearly evidenced by the posture of a question asked of the trial judge by the foreman of the jury, indicating the jury's understanding that the nature of the allowable damages was punitive:
 "In the case that we find guilty or not guilty, the amount that you have down for Mrs. Bannerman, or whatever, is the amount supposed to be the punishment that we put if we render an innocent or guilty — is that what this is the purpose of? Is it a punishment?
 "THE COURT: `Yes, sir, it is in the form of a suitable fine, penal in nature.'"
 ADMISSIBILITY OF EVIDENCE
Defendant Estes maintains that the trial court committed reversible error in admitting evidence of the temperature of the nursing home's hot water as taken on January 2 or 3, 1978 — approximately one week after the incident occurred. The error, says Estes, lies in the admission of the results of a water temperature test which was not direct evidence of the water temperature on the day Ronnie was found in the bathtub. Citing S.H. Kress Co. v. Barratt, 226 Ala. 455, 147 So. 386
(1933), Estes reminds us that evidence of this sort "is competent only upon its first being made to appear that the conditions were substantially the same on the two occasions."Barratt, 226 Ala. at 459.
"Substantially the same," however, does not require total identity of circumstances; it requires, instead, a "similarity of conditions to give an experiment sufficient probative value to warrant its admission, and if the conditions were dissimilar in an essential particular, the evidence should be rejected."Louisville Nashville R. Co. v. Sullivan, 244 Ala. 485, 490,13 So.2d 877 (1943). Neither is direct proof a requisite to the admissibility of the results of tests such as these (SouthernR. Co. v. Lefan, 195 Ala. 295, 70 So. 249 (1915)); and "the lack of exact identity affects only the weight and not the competency of the evidence." Sullivan, 244 Ala. at 490. Furthermore, the decision whether the "sufficiently similar" criterion for this evidence has been met rests largely within the sound discretion of the trial court. Sullivan, supra.
Testimony concerning the hot water temperature came from both Mr. Triplett, administrator of Estes, and Mr. Clark, the maintenance man for Estes. That testimony, heard by the trial judge, indicated the temperature of Estes's hot water was checked upon the direction of Mr. Triplett, in the presence of a City of Montgomery inspector and in the same bathtub in which *Page 114 
Ronnie had been placed by the aide. Mr. Clark, who is in charge of the management of the entire Estes facility and the necessary maintenance personnel, testified that, to his knowledge, the water temperature had been neither checked nor adjusted since Ronnie's injury occurred.
Taking all these circumstances into consideration, we hold that the trial judge, upon hearing the evidence concerning the hot water temperature at the nursing home, did not abuse his discretion in admitting this evidence.
 FAILURE TO GIVE REQUESTED JURY CHARGE
Defendant Jackson claims that the trial judge committed reversible error in refusing to give Jackson's written requested jury charge No. 5. That charge, alleges Jackson, stated a correct principle of law which was applicable to the instant case and which was not covered by the judge's oral charge.
The refused written charge stated:
 "I charge you the fact that Ronnie Joe Cowan died while under the care and treatment of the Defendant, Jackson Hospital and Clinic, Inc., does not in and of itself mean that the Plaintiffs are entitled to recover a judgment against the Defendant Jackson Hospital and Clinic, Inc. The Plaintiffs have the burden of proof in this case to reasonably satisfy you from the evidence that Jackson Hospital and Clinic, Inc., did not use the care, skill and diligence that the ordinarily skilled hospital in the same general neighborhood uses under like or similar circumstances and that this failure to exercise such care, skill and diligence on the part of Jackson Hospital and Clinic, Inc., was the direct cause of the death of Ronnie Joe Cowan. If the Plaintiffs have not reasonably satisfied you of these facts, from the evidence, then they have failed to meet the burden of proof required by law and are not entitled to a verdict against the Defendant Jackson Hospital and Clinic, Inc."
The trial court's oral charge, however, when viewed in its entirety, sufficiently covered all principles of law which govern the correct disposition of the issues of this case.
Specifically, the trial judge's oral charge included the following statements:
 "The complaint alleges against the defendant Jackson Hospital, that the defendant undertook to provide hospital and nursing care to the deceased, and that the defendant negligently failed to provide proper hospital and nursing care to the plaintiff's intestate.
 "The defendants, in response to these allegations . . . have each separately entered pleas of the general issue or general denial. Under the law, a plea of the general issue has the effect of placing the burden of proof on the plaintiffs to reasonably satisfy you from the evidence, the truth of those things claimed by them in the bill of complaint. The defendants carry no burden of proof.
". . .
 "As to the defendant Jackson Hospital, the duty arises in that in rendering services to a patient, a hospital must use that degree of care, skill, and diligence used by hospitals generally in the community under similar circumstances.
". . .
 "Negligence is not actionable unless the negligence is the proximate cause of the injury. The law defines proximate cause as that cause which in the natural and probable sequence of events and without the intervention of any new or independent cause, produces the injury, and without which such injury would not have occurred. For an act to constitute actionable negligence, there must not only be some causal connection between the negligent act complained of and the injury suffered, but connection must be by natural and unbroken sequence, without intervening deficient causes, so that but for the negligence of the defendant, the injury would not have occurred.
 "If one is guilty of negligence which concurs or combines with the negligence *Page 115 
of another, and the two combine to produce injury, each negligent person is liable for the resulting injury. And the negligence of each will be deemed the proximate cause of the injury. Concurrent causes may be defined as two or more causes which run together and act contemporaneously to produce a given result or to inflict an injury. This does not mean that the causes of the acts producing the injury must necessarily occur simultaneously, but they must be active simultaneously to efficiently and proximately produce a result.
 "In an action against two or more defendants for injury allegedly caused by combined or concurring negligence of the defendants, it is not necessary to show negligence of all the defendants in order for recovery to be had against one or more shown to be negligent. If you are reasonably satisfied from the evidence in this case that all of the defendants are negligent and that their negligence concurred and combined to proximately cause the injury complained by the plaintiffs, then each defendant is liable to the plaintiffs."
Moreover, the language of Jackson's requested charge No. 5 — "the direct cause" — does not contemplate joint tortfeasors. To be sufficient the charge need only have been enlarged to state that the hospital's conduct must have been one of the direct causes that combined to result in death or must have been the direct cause of death. Because Jackson's requested charge was insufficient in this respect, it could properly have been refused.
Other alleged errors were either not sufficiently preserved or were not so prejudicial as to warrant reversal. Therefore, we affirm.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.