Eliza KIRKLAND, individually, and on behalf of all other Persons Similarly Situated, Plaintiff-Appellee,

v.

MIDLAND MORTGAGE COMPANY, Defendant-Appellant.

No. 00-10765.

United States Court of Appeals,

Eleventh Circuit.

March 7, 2001.

Appeal from the United States District Court for the Southern District of Georgia. (No. 98-00083-CV-1), Dudley H. Bowen, Jr., Chief Judge.

Before ANDERSON, Chief Judge, and MARCUS and KRAVITCH, Circuit Judges.

ANDERSON, Chief Judge:

Midland Mortgage Company ("Midland") brings this interlocutory appeal of the district court's certification of a class and denial of Midland's motion for summary judgment in this diversity action. Because we conclude that the district court lacked subject matter jurisdiction, we vacate and remand with instructions to remand to the state court.

## I. FACTS

The plaintiff, Eliza Kirkland, obtained a mortgage from Cameron-Brown in 1985 for her residence. Ten years later, Midfirst Bank acquired the mortgage and Midland began servicing it through an arrangement these two corporations have. As part of its responsibilities, Midland ensures that the mortgagor has maintained hazard insurance because this protects the mortgagee's collateral. If the mortgagor fails to retain the insurance, Midland is authorized to institute collection remedies, including foreclosure. If the mortgagor is unable to obtain insurance, Midland obtains "force-placed" or "lender-placed" insurance on the property through Balboa Insurance Company ("Balboa").

Midland has a special procedure that it uses when placing insurance on these properties. First, it sends a series of warning letters to the mortgagor which state when the insurance will be placed on the property, that the insurance may be less than the previous coverage, what the cost of the new premium will be, and that the insurance may be placed with an affiliate of Midland, i.e. FirstInsure. Midland also states that usually it calls the mortgagor before placing the insurance with FirstInsure. FirstInsure acquires the insurance policies from Balboa, which insures properties that other companies decline to insure. Balboa pays commissions of between twenty and thirty-three percent to FirstInsure. This relationship with Balboa permits

Midland to cancel policies and return premiums and also to have policies issued retroactively.

Ms. Kirkland's mortgage required her to maintain hazard insurance on her property, and she acquired her insurance through Allstate Insurance Company ("Allstate"). On October 6, 1995, Allstate issued a cancellation notice of her insurance, effective on September 29, 1995. Midland acquired the servicing rights to the Kirkland mortgage in October 1995 but the notice of cancellation was sent to the previous servicing company. Thus Midland did not learn of the cancellation until January 1996. Because the property had apparently been uninsured for several months, Midland dispensed with its usual procedures and sent Ms. Kirkland only the last letter, informing her that insurance had been issued and that the premium was $708, which would be charged to her escrow account. This letter was dated April 3, 1996. After her escrow account was analyzed, Midland sent her an escrow disclosure statement on July 29, 1996 informing her of the increase in mortgage payment that was needed.

Ms. Kirkland contacted Midland in August 1996, seeking an explanation. There were numerous telephone contacts until the end of September 1997, when Allstate faxed a copy of its records showing coverage for the second year of Balboa coverage, September 1996 through September 1997. In one of the two faxes, Allstate stated that the policy was a continuous coverage policy but it did not explain the notice of cancellation or whether the insurance had been reinstated during the first year of Balboa coverage, September 1995 through September 1996. Midland cancelled the Balboa coverage and refunded Ms. Kirkland's payment for the second year.

Ms. Kirkland filed suit in the Superior Court of Richmond County against Midland and Balboa Insurance Company ("Balboa") on October 13, 1997, alleging breach of fiduciary duty, fraud, theft, and money had and received. Shortly thereafter, Balboa removed the case to federal court. On December 30, 1997, the district court remanded the suit back to state court. On March 5, 1998, Ms. Kirkland dismissed Balboa without prejudice. Thereafter, Midland removed the action to the district court on April 23, 1998. Ms. Kirkland initially moved to remand but later withdrew that motion.[1]

In October 1998, Ms. Kirkland moved for class certification, and the district court granted the motion on January 4, 2000, for the breach of fiduciary duty claim. At the same time, the district court denied Midland's motion for reconsideration of its denial of Midland's motion for summary judgment. Both the

---

[1]Apparently the parties agreed that Kirkland would drop her motion to remand in return for Midland's promise not to transfer the action to another district court. However, parties cannot create federal jurisdiction by agreement. *See Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1261 (11th Cir.2000).

denial of the motion for summary judgment and the certification of the class were certified by the district court pursuant to 28 U.S.C. § 1292(b), and this court granted permission to appeal pursuant to 28 U.S.C. § 1292(b) and Fed.R.Civ.P. 23(f). Thus, we have appellate jurisdiction of this interlocutory appeal.

## II. JURISDICTION

Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding. *See University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999). Appellate courts must also examine the subject matter jurisdiction of the lower courts in actions that they review. *See id.* (citing *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)).

One of the limited grounds of jurisdiction that federal courts have is diversity jurisdiction, which is the only source of jurisdiction available in this case. Article III of the Constitution provides the outer limits of the federal courts' jurisdiction and vests in Congress the power to determine what the extent of the lower courts' jurisdiction will be. *See Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1261 (11th Cir.2000). The diversity jurisdiction statute, 28 U.S.C. § 1332, requires not only diversity of citizenship among the parties but also that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.

Generally, if no single plaintiff can satisfy the jurisdictional amount, then there is no diversity jurisdiction. However, in certain instances, multiple plaintiffs have a unified, indivisible interest in a common fund which would permit them to aggregate[2] their individual claims to reach the jurisdictional amount. *See Morrison,* 228 F.3d at 1262 (quoting *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)).

Although the claim of each individual class member in the instant case was apparently far less than the $75,000 jurisdictional amount, Midland removed this case on the basis of *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353 (11th Cir.1996). The court in *Tapscott* held that the claim of class members for Alabama punitive damages was a single collective right in which the putative class has a common and undivided interest, thus permitting determination of the jurisdictional amount on the basis of the aggregate punitive damages for the class.

---

[2]As the court in *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1073 n. 3 (11th Cir.2000), explained, the use of the word "aggregate" in this context "is commonly used by courts when addressing the issue of whether the total amount of a class claim should be attributed to each member of the class."

However, in *Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000)("*Cohen II* "), we held that *Tapscott* 's holding about aggregation of punitive damages was inconsistent with a binding earlier case, *Lindsey v. Alabama Tel. Co.,* 576 F.2d 593 (5th Cir.1978).[3] *Cohen II* held that where there is an intracircuit conflict of authority, the earlier panel opinion binds, and thus that *Lindsey* must be followed rather than *Tapscott. See* 204 F.3d at 1072. Both *Tapscott* and *Lindsey* involved the issue of aggregation of Alabama punitive damages for purposes of determining the jurisdictional amount, and thus the effect of *Cohen II* was to abrogate *Tapscott* 's holding with respect to the aggregation of punitive damages. *Accord Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1264-65 (11th Cir.2000) (following *Cohen II* ). *Cohen II* involved a class action asserting claims, including punitive damages, based on Florida law. In *Cohen v. Office Depot,* 184 F.3d 1292, 1295 (11th Cir.1999)("*Cohen I* "), the court had already held that there was no material difference between the nature of Florida punitive damages and Alabama punitive damages for purposes of the aggregation issue. In both states, punitive damages serve the collective good by deterring a public wrong and punishing egregious wrongdoing on the part of the defendant; the award is measured to reflect, not the wrong done to a single individual, but the wrongfulness of the conduct as a whole. *Cohen II,* 204 F.3d at 1075.

With *Tapscott* no longer available to prop up Midland's theory to support jurisdiction, Midland resorts to several alternative arguments. First, Midland argues that the instant case is governed by Georgia law, and that the nature of punitive damages under Georgia law is materially different from that under the laws of Alabama and Florida. We reject this argument. The only aspect of Georgia law to which Midland points as being different is that a Georgia defendant would not be concerned with the division of a potential punitive damages award. However, the same was true under Alabama law, *see Tapscott,* 77 F.3d at 1359, and of course the binding *Lindsey* case establishes that there can be no aggregation of Alabama punitive damages. Like the law in Florida and Alabama, the law of punitive damages in Georgia restricts the use of punitive damages to the deterrence and punishment of the defendant, not the compensation of the plaintiff. *See* O.C.G.A. § 51-12-5.1(c)("Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."). The amount of the award is based not on the injury to the particular plaintiff but on the behavior of the defendant in general. *See Southeastern Sec. Ins. Co. v. Hotle,* 222 Ga.App. 161, 164, 473 S.E.2d 256, 261 (1996). For purposes of the aggregation issue, we hold that the

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

nature of punitive damages under Georgia law is not materially different from that under the laws of Alabama and Florida, and thus we hold that the rule against aggregation of punitive damages established in *Morrison* and *Cohen II* applies also to Georgia punitive damages.

We note that plaintiffs in the instant case argue that Oklahoma law, not Georgia law, governs. We also note that the district court so held. We need not decide which law governs, because we hold that the nature of punitive damages under Oklahoma law is not materially different from that in Alabama, Florida, and Georgia.[4]

Without aggregation of punitive damages, it is clear that Midland will not be able to carry its burden of proof[5] that punitive damages are likely to be large enough to approach the $75,000 jurisdictional amount per class member, when divided by the numerous class members in the instant case. If there are 9,400 class members, as Ms. Kirkland currently asserts, the claim including punitive damages would have to total approximately $700,000,000,[6] which seems inconceivable under the circumstances of this case.[7]

Midland next argues that the *Cohen II* decision should not be applied retroactively because jurisdiction is fixed at the time of removal. The general rule is that judicial decisions are applied retroactively. *See, e.g., McKinney v. Pate,* 20 F.3d 1550, 1565 (11th Cir.1994). Retroactive application of a "new" rule of law may be avoided only if:

> 1) the decision adopting the rule does so "either by overruling clear past precedent or by deciding an issue of first impression the resolution of which was not clearly foreshadowed;" and

---

[4] In Oklahoma, punitive damages are awarded to deter tortious behavior and to set an example. *See* Okla. Stat. tit. 23, § 9.1(A) (2000). The amount awarded is based on a number of factors, including "the seriousness of the hazard to the public," the excessiveness of the tort, and "the degree of the defendant's awareness of the hazard and of its excessiveness." *Id.*

[5] Midland argues that dismissal of a case for lack of diversity requires a showing to "a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). However, in removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists. *See Tapscott,* 77 F.3d at 1356. Where the plaintiff has not plead a specific amount of damages, as Ms. Kirkland has not here, the defendant is required to show that by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied. *See id.* at 1357.

[6] 9,400 times $75,000 equals $705,000,000.

[7] Midland does not argue that an award of attorney's fees could significantly contribute to satisfaction of the jurisdictional amount. However, even if attorney's fees were permissible under the governing law, under *Morrison* any such award would also have to be divided *pro rata* amongst the class members for purposes of determining the jurisdictional amount, unless an applicable state statute provided that attorney's fees were awarded solely to the class representative. *Morrison,* 228 F.3d at 1274.

2) "the application of the old rule in the instant case [does] not contravene the purpose and operation of the provision being interpreted;" and

3) "application of the new rule in the instant case [would] be inequitable."

*Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1391 n. 40(11th Cir.1998) (en banc)(quoting *McKinney,* 20 F.3d at 1565).

In this case, none of the foregoing conditions is present. Because of the existence of *Lindsey, Tapscott* did not provide clear precedent that *Cohen II* overruled. Moreover, application of the *Tapscott* rule would contravene the purpose of the provision being interpreted. As discussed above, subject matter jurisdiction is an important consideration that cannot be waived or ignored so that the application of an erroneous jurisdictional rule would contravene the purpose of the relevant provision. Lastly, Midland has not demonstrated how remand to the state court would be inequitable.

Finally, Midland requests that we remand this action to the district court to give it an opportunity to demonstrate that Ms. Kirkland or another member of the class could meet the jurisdictional amount in controversy. In *Morrison,* 228 F.3d at 1275, we did just that. However, in *Morrison,* there was an apparently credible assertion that some members of the class had suffered substantial damages. By contrast, in the instant case, there has been no such assertion, but rather a merely conclusory request for a remand. At oral argument, we pressed counsel for Midland for some credible basis upon which Ms. Kirkland or another class member might satisfy the jurisdictional amount, but counsel was unable to articulate any such basis. Accordingly, we conclude that the requested remand would be futile.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded to the district court with instructions to remand to the state court due to lack of subject matter jurisdiction.

VACATED AND REMANDED WITH INSTRUCTIONS.