David H. NELSON, etc.,
et al., Plaintiffs,

v.

WHIRLPOOL CORPORATION,
et al., Defendants.

Civil Action No. 09–0520–WS–M.

United States District Court,
S.D. Alabama,
Southern Division.

Nov. 13, 2009.

Order Denying Reconsideration
Jan. 11, 2010.

George M. Keahey, Robert D. Keahey, Wyman O. Gilmore, Jr., Ronnie E. Keahey, Grove Hill, AL, John A. Barney, Gilmore Law Firm, Franklin, TN, for Plaintiffs.

Edward G. Bowron, Burr & Forman, LLP, Mobile, AL, Angela Raines Rogers, Charles A. Stewart, III, Bradley Arant Boult Cummings, LLP, Montgomery, AL, Joseph C. McCorquodale, III, Post Office Drawer, Jackson, AL, for Defendants.

## ORDER

WILLIAM H. STEELE, District Judge.

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 7). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 1, 7, 8, 10, 12, 13), and the motion is ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be denied.

## BACKGROUND

On January 30, 2009, a combination air conditioner/heater window unit manufactured by defendant Whirlpool Corporation ("Whirlpool") and sold by defendant Lowe's Home Centers, Inc. ("Lowe's") ex-

ploded and/or caught fire, setting afire the home of the plaintiffs. They escaped the conflagration, but their three minor children did not. In this lawsuit, the plaintiffs, as the personal representatives of their children's estates, sue for their wrongful deaths under Alabama law, alleging claims of negligence, wantonness and products liability.[2]

The original complaint, filed in May, named as defendants Lowe's, Home Depot and Clarke–Washington Electric Membership Corporation ("Clarke"). After a visual inspection of the site in July confirmed Whirlpool as the manufacturer and Lowe's as the seller, the plaintiffs filed an amended complaint deleting Home Depot and adding Whirlpool.

Removal was effected by Whirlpool and Lowe's on the basis of diversity of citizenship. Although Clarke, like the plaintiffs, is an Alabama citizen, the removing defendants argue its citizenship can be ignored because it was fraudulently joined. The plaintiffs respond that Clarke was not fraudulently joined and that, in any event, the defendants have not shown that the amount in controversy exceeds $75,000. The plaintiffs seek remand and an award of their fees and expenses.

## DISCUSSION

 "[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n. 5 (11th Cir.2001); *accord Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir.2008). The removing defendants must therefore show both that Clarke was fraudulently joined and that the amount in controversy exceeds $75,000. *E.g., Henderson v.*

---

**1.** The plaintiffs' motion for leave to file a reply brief, (Doc. 13), which has not been opposed by the defendants, is **granted.**

**2.** David Nelson sues as the personal representative of two estates, his wife Anne as personal representative of the third.

*Washington National Insurance Co.*, 454 F.3d 1278, 1283 (11th Cir.2006) (fraudulent joinder); *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir.2002) (amount in controversy).

## I. Amount in Controversy.

■ "[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996), *overruled on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). Because the plaintiff has made an unspecified demand for damages, the *Tapscott* standard applies here.[3]

■ "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

Whirlpool and Lowe's offer no extrinsic evidence as to the amount in controversy. In both their notice of removal and their brief in opposition to remand, they rely exclusively on the fact that the suit is one for wrongful death. (Doc. 1 at 2; Doc. 12 at 14). In order for this argument to succeed, the jurisdictional amount must be "facially apparent," *Williams*, 269 F.3d at 1319, or "readily deducible" from the face of the complaint, rather than merely "speculative." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211, 1213 n. 63 (11th Cir. 2007). The removing defendants say the amount in controversy is readily deducible from the complaint, citing this Court's previous ruling that "[c]ertain injuries are by their nature so substantial as to make it readily apparent that the amount in controversy is satisfied." *Sanderson v. Daimler Chrysler Motor Corp.*, 2007 WL 2988222 at *1 (S.D.Ala.2007).

■ Death is certainly a most grievous injury, but Alabama's unique wrongful death scheme precludes the Court from directly applying *Sanderson* here. *Sanderson* recognized that some injuries are so devastating that they establish the amount in controversy based on the compensatory damages more likely than not flowing therefrom. In an Alabama wrongful death case, however, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff." *Trott v. Brinks, Inc.*, 972 So.2d 81, 84 (Ala.2007). The plaintiffs have undoubtedly suffered "a shattering loss that no parents would be willing to share at any price," (Doc. 12 at 16), but a jury cannot lawfully compensate them for that loss. Because compensatory damages cannot be awarded in a wrongful death action under Alabama law, they cannot be considered in assessing the amount in controversy. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299–1300 (11th Cir. 1999) (punitive damages were not recover-

---

**3.** The parties do not address whether the jurisdictional threshold may be met by aggregating the claims as to all three decedents or both plaintiffs. The Court assumes that it cannot. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir.2002) ("We do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit," but only when the plaintiffs "unite to enforce a single claim or right, in which they have a common and undivided interest.") (internal quotes omitted).

able and so could not be considered in evaluating the amount in controversy).

■ The plaintiffs argue that, because wrongful death damages are purely punitive, the only relevant factor in assessing the amount of such damages is "the conduct and culpability of the specific defendant," which is unique to each case and thus speculative for purposes of *Lowery.* (Doc. 7 at 13).[4] But while the jury may, as in other cases involving punitive damages, consider the culpability of the defendant's conduct and the need to deter others from engaging in similar conduct, *Deaton, Inc. v. Burroughs,* 456 So.2d 771, 776 (Ala.1984) the amount of punitive damages in a wrongful death case is not based only on the defendant's conduct. Rather, that amount is also "determined by the gravity of the wrong done." *Id.*

■ Far from ignoring the tragedy of a life cut short in assessing damages for its demise, Alabama's wrongful death scheme elevates it to prime importance. "The very purpose of punitive damages, then, in a wrongful death context, rests upon the Divine concept that all human life is precious." *Estes Health Care Centers, Inc. v. Bannerman,* 411 So.2d 109, 113 (Ala.1982). "[I]t is indeed the value of life itself upon which punitive damages are premised."

*Id.* Thus, "[t]he legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved—preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death." *Campbell v. Williams,* 638 So.2d 804, 811 (Ala.1994). The jury is specifically expected to consider the finality of death in fixing the amount of punitive damages, *id.,* and lawyers may properly make jury arguments concerning the value of human life (in general, not of the particular decedent).[5] While it is true that "the policy of this state is to regard human life as being beyond measure in terms of dollars," *id.,* that policy exists to prevent juries from valuing some lives less than others,[6] not to require them to ignore the great value of every life.[7]

■ The complaint alleges that the defendants wantonly took human life. Given that Alabama law views every human life as precious and requires juries to consider the finality of its premature destruction in assessing damages, the Court concludes that it is readily deducible from the complaint that the amount in controversy exceeds $75,000.[8]

Two fellow district judges have concluded that, post-*Lowery,* an Alabama wrongs-

---

4. *See Lowery,* 483 F.3d at 1220 (where the defendant needed only to show combined compensatory and punitive damages of $12,500, "[t]o reach such a conclusion [based only on the complaint], we would necessarily need to engage in impermissible speculation").

5. *Lance, Inc. v. Ramanauskas,* 731 So.2d 1204, 1215–16 (Ala.1999); *Atkins v. Lee,* 603 So.2d 937, 942 (Ala.1992).

6. The policy precludes juries from considering, inter alia, the decedent's wealth, talents, education, or station in life. *Id.*

7. The centrality of the preciousness of human life figures in other aspects of Alabama's wrongful death scheme. First, even though

only punitive damages may be awarded, they may be awarded for merely negligent conduct. Ala.Code § 6–5–410(a). Second, each joint tortfeasor is jointly and severally liable for the entire award, regardless of how slight its culpability. *Campbell,* 638 So.2d at 809–12.

8. It might be possible to argue that the negligent taking of human life does not, without more, place over $75,000 in controversy. Because the complaint alleges also the wanton taking of human life, the Court need not resolve that question.

By considering the allegation of wantonness, the Court does not impermissibly speculate about case-specific facts. Regardless of how a particular defendant's conduct comes

ful death complaint that does not include an explicit demand for over $75,000 must be remanded. In *Thibodeaux v. Paccar, Inc.*, 592 F.Supp.2d 1377, 1380 (M.D.Ala. 2009), the Court relied on Alabama's pattern jury instructions to conclude that "the measure of damages in an Alabama wrongful death claim is not the value of human life but rather the wrongfulness of the defendant's conduct" and that "the only damages recoverable, therefore, are those related to the defendant's conduct and culpability." *Id.* at 1381.[9] As discussed above, however, Alabama law is to the contrary.[10] *Harden v. Peek*, 2009 WL 1423367 at *3 & n. 1 (S.D.Ala.2009), and *Dominguez v. Peek*, 2009 WL 1423405 at *3 & n. 1 (S.D.Ala.2009), relied on the same reasoning and are subject to the same objection.[11]

One Alabama district judge has denied a motion to remand a wrongful death action removed on the strength of the com-

plaint alone. While the Court does not embrace all the reasoning found in *Roe v. Michelin North America, Inc.*, 637 F.Supp.2d 995 (M.D.Ala.2009), it does concur that "[n]othing in *Lowery* says a district court must suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *Id.* at 999. Indeed, district courts are instructed to apply common sense in determining if a plaintiff has stated a viable claim against a resident defendant. *Legg v. Wyeth*, 428 F.3d 1317, 1325 n. 5 (11th Cir.2005). If the Court is required to employ common sense in assessing whether removal jurisdiction exists because the resident defendant was fraudulently joined, it is difficult to see how it could be precluded from using common sense in determining whether removal jurisdiction exists because the amount in controversy exceeds $75,000.[12] Few things would defy common

---

to be regarded as wanton, the mere fact that the defendant wantonly took human life heightens Alabama's public policy of awarding damages to vindicate the sanctity of all life.

The burden on the removing defendant is not to show that the amount in controversy necessarily is above $75,000, but only to show that it "more likely than not" exceeds that amount. *Williams*, 269 F.3d at 1320; *Kirkland*, 243 F.3d at 1281 n. 5; *Tapscott*, 77 F.3d at 1357. The wanton taking of human life satisfies either standard.

9. Judge Fuller has relied on *Thibodeaux* to order remand in several other cases, but they do not amplify the reasoning provided in *Thibodeaux*. *See Seaborn v. Michelin North America, Inc.*, 2009 WL 435071 (M.D.Ala. 2009); *Pittman v. General Motors Corp.*, 613 F.Supp.2d 1250 (M.D.Ala.2009). Judge Fuller has, however, acknowledged that "there is some commonsense appeal to th[e] contention" that a claim for wrongful death renders the amount in controversy facially apparent. *Id.* at 1252.

10. Judge Fuller quoted that portion of the pattern charge stating that the jury is " 'not to

consider the monetary value of the life of the decedent.' " *Id.* at 1381 (quoting Alabama Civil Pattern Jury Instruction 11.18). This instruction properly precludes a jury from awarding compensatory damages based on the value of the decedent's life, but it does not preclude a jury from considering the value of human life in general. As discussed in text, Alabama juries are expected to weigh such considerations.

11. *Harden* and *Dominguez*, among others, correctly observe that, post-*Lowery*, the amount in controversy cannot be established by a review of jury verdicts in similar cases, including wrongful death cases. 2009 WL 1423367 at *3, 2009 WL 1423405 at *3; *accord Yates v. Medtronic, Inc.*, 2008 WL 4016599 at *10–11 (S.D.Ala.2008); *Siniard v. Ford Motor Co.*, 554 F.Supp.2d 1276, 1277–78 (M.D.Ala.2008). No citation to past results, however, is necessary to support the Court's conclusion that the wanton taking of human life puts more than $75,000 in controversy.

12. Just as common sense does not replace the "any reasonable possibility" standard for fraudulent joinder but illuminates how that determination is to be made, common sense

sense more completely than insisting that a suit for wantonly killing a human being, in which the damages are designed to vindicate "the Divine concept that all human life is precious," the plaintiff may explicitly argue "the value of life itself," and the jury is expected to consider "the finality of death" in assessing damages, does not place more than $75,000 in controversy.

## II. Fraudulent Joinder.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983). Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law. *Id.* at 1440.[13] There must be "no *reasonable* possibility" of legal liability; a mere *theoretical* possibility will not prevent a conclusion of fraudulent joinder. *Legg v. Wyeth*, 428 F.3d 1317, 1325 & n. 5 (11th Cir.2005) (emphasis added). The burden is on the defendant to make the required showing by "clear and convincing evidence." *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir.2006). "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997); *accord Florence v. Crescent Resources, LLC*, 484 F.3d 1293,

1299 (11th Cir.2007) ("[A]ny ambiguity or doubt about the substantive law favors remand to state court.") (internal quotes omitted).

The amended complaint alleges that the heater exploded and/or caught fire, causing the house fire that claimed the children's lives. (Doc. 1 at 53). The complaint alleges that Whirlpool manufactured the heater, that Lowe's sold it, that they were negligent or wanton in doing so, and that their conduct renders them liable under the Alabama Extended Manufacturers' Liability Doctrine. (*Id.* at 54–55). There is no allegation that Clarke had anything to do with the heater, which admittedly was the origin of the fire. Instead, the complaint alleges that Clarke failed to properly operate, maintain and inspect the electrical distribution lines, distribution transformer, overhead service entrance cable, meter box and meter set servicing the plaintiffs' home and failed to provide proper and adequate over-current and surge protection to these components of Clarke's delivery system. (*Id.* at 55–56).

The plaintiffs admit they have no evidence indicating there was anything wrong with any of these components, and they admit they have no evidence that any of these components experienced a surge or similar event. This would appear to be a formidable obstacle to denying fraudulent joinder, but the plaintiffs gamely offer several arguments to the contrary.

First, speaking through their expert, they note that none of the components have been examined, tested or disassembled, and they conclude it would thus be "premature" to "eliminate" any of the components as a cause of the fire. (Schulz

does not replace *Lowery's* "readily deducible" standard but rather informs it.

**13.** *Accord Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir.1997) (the issue is "whether

the facts alleged in Plaintiffs' complaint state even an arguable cause of action under Georgia law") (emphasis omitted).

Affidavit, ¶¶ 38–46). The hidden premise of this argument is that a plaintiff is free to sue anyone without any inculpating evidence whatsoever, so long as he also lacks conclusive exculpating evidence. The plaintiffs offer no authority for any such breathtaking proposition.

■■■ The defendants urge the Court to apply the rule announced in *Sellers v. Foremost Insurance Co.*, 924 F.Supp. 1116 (M.D.Ala.1996). According to *Sellers,* when the fraudulent joinder inquiry revolves around facts that do not lie within the plaintiff's possession (such as whether Clarke's equipment was defective or experienced a surge), the plaintiff's allegations must satisfy Rule 11; that is, "after an inquiry reasonable under the circumstances . . ., the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). As the Court has previously employed *Sellers,*[14] and as the plaintiffs offer no reason why it should not do so here, the Court scrutinizes the plaintiffs' allegations pursuant to *Sellers.*

The plaintiffs fail this inquiry at two points. First, they do not suggest that the appropriate examinations and testing are likely to uncover evidence that Clarke's components were defective or experienced a surge. Instead, as noted above, they cling to the impossibility of ruling out the discovery of such evidence. (Doc. 7 at 6–7, 8). Their position simply reveals that the possibility of linking Clarke to the fire is merely theoretical, not practical, and thus insufficient under *Legg.*

Second, the plaintiffs did not perform an investigation reasonable under the circumstances before naming Clarke as a defendant. According to the plaintiffs themselves, they sued Clarke knowing nothing more than that Clarke supplied electricity to the residence. After suit was filed against Clarke, Lowe's and Home Depot, representatives of the plaintiff and these entities, plus Whirlpool,[15] conducted a joint visual inspection of the site, which confirmed Whirlpool as the manufacturer and Lowe's as the seller but which—as the plaintiffs' expert acknowledges—contributed no evidence that Clarke was in any way responsible for the fire.

The plaintiffs assert they sued Clarke without any evidence to support Clarke's liability in order to arrange the joint inspection and thereby avoid a claim of spoliation. (Doc. 13 at 2). No doubt it was prudent to arrange a joint inspection, but the plaintiffs do not explain why it was necessary to sue Clarke before the inspection occurred; indeed, Whirlpool participated in the inspection even though it had not been sued. The original naming of Clarke as a defendant was thus done without first undertaking an inquiry reasonable under the circumstances.

■■■ Nor did the visual inspection—which revealed no evidence suggestive of Clarke's liability—constitute an inquiry reasonable under the circumstances. The plaintiff's own expert concedes that appropriate examination, testing and disassembly is an essential predicate "to even begin to evaluate whether or not the electric utility shares or bears alone any responsibility" for the fire. (Schulz Affidavit, ¶ 46). That is, the plaintiffs knew there was no factual basis for alleging Clarke was responsible for the fire, and that there could be no such basis until further examination and testing occurred. Thus, such examination and testing were a necessary part of any reasonable inquiry before suing Clarke unless such examination and test-

---

14. *Bumann v. Depuy, Inc.*, Civil Action No. 03–0084–WS–M, Doc. 25 at 4.

15. (Schulz Affidavit, ¶ 36).

ing could not reasonably be had. Because there is no indication in the record that the plaintiffs attempted to arrange with Clarke and others for such examination and testing, or that the defendants refused to cooperate, the plaintiffs did not engage in a reasonable inquiry.[16]

The plaintiffs' second argument is based on the affidavit of their other expert, who inspected the house before suit was filed and noticed (or was told of) several instances of improper wiring below the meter box. (Posey Affidavit, ¶¶ 5–7). Although this wiring was the direct responsibility of the homeowners rather than Clarke, the plaintiffs note that a utility can be liable if it supplies electricity to a residence with actual knowledge of a defective or dangerous condition in the home's wiring. *McGinnis v. Jim Walter Homes, Inc.*, 800 So.2d 140, 144 (Ala.2001). Because the expert states the wiring issues would have been open and obvious to Clarke (they lay in view just below the meter, which Clarke's agent would regularly read), (Posey Affidavit, ¶ 8), the plaintiffs conclude they have evidence of Clarke's negligence. (Doc. 7 at 7).

Perhaps they do, but the amended complaint contains no allegation that Clarke wrongfully supplied electricity to a house with defective wiring. On the contrary, and as discussed above, the amended complaint carefully and explicitly delineates Clarke's alleged wrongdoing, which is confined to problems with Clarke's components or a surge event affecting them. In order to escape fraudulent joinder, there must be a "possibility that the state law might impose liability on a resident defendant *under the circumstances alleged in*

*the complaint." Florence,* 484 F.3d at 1299 (emphasis added). Because the circumstances on which the plaintiffs and Posey rely are not alleged in the complaint, they are irrelevant to the fraudulent joinder analysis.

Whirlpool and Lowe's ask the Court to dismiss Clarke as a defendant. (Doc. 12 at 9). Because they have not attempted to show they have standing to seek dismissal of a co-defendant, the Court declines to do so. The proper remedy on a finding of fraudulent joinder is not dismissal but to "ignore the presence of the non-diverse defendant." *Henderson,* 454 F.3d at 1281.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion to remand is **denied.** The plaintiffs' motion for an award of fees and expenses, (Doc. 7 at 13), is likewise **denied.**

DONE and ORDERED this 13th day of November, 2009.

## ORDER

This matter is before the Court on a motion to reconsider filed by defendant Clarke–Washington Electric Membership Corporation ("Clarke"), and the plaintiffs' joinder in Clarke's motion, which the Court construes as a second motion to reconsider. (Docs. 20, 27).[1] The defendants have filed briefs in opposition and Clarke a reply, (Docs. 26, 29, 31), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions to reconsider are due to be denied.

---

**16.** No legal time constraints compelled the plaintiffs to sue when they did, since the amended complaint was filed four months after the fire and the amended complaint two months later, leaving 1½ years remaining on the statute of limitations.

**1.** Clarke's motion to reconsider included in the alternative a motion to dismiss. (*Id.* at 1, 10–11). That motion has previously been denied for failure to file the brief required by Local Rule 7.1(a). (Doc. 21).

## BACKGROUND

The plaintiffs sued a number of defendants in state court after their three children were killed in a home fire. Defendants Whirlpool Corporation ("Whirlpool") and Lowe's Home Centers, Inc. ("Lowe's") removed on the basis of diversity of citizenship.[2] Although both the plaintiffs and Clarke are citizens of Alabama, the removing defendants argued that Clarke was fraudulently joined, so that its citizenship was irrelevant.

The plaintiffs moved to remand, arguing that Clarke was not fraudulently joined and that the defendants had not met their burden of showing that the amount in controversy exceeds $75,000. The Court rejected the plaintiffs' position and denied the motion to remand. (Doc. 17). The motions to reconsider challenge that ruling.

## DISCUSSION

The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023–24 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir.1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir.2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gipson v. Mattox*, 511 F.Supp.2d 1182, 1185 (S.D.Ala.2007) (internal quotes omitted).[3] As this Court has recently noted:

> Motions to reconsider serve a valuable but limited function. They do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.

*Dyas v. City of Fairhope*, 2009 WL 5062367 at *3 (S.D.Ala.2009).

The Court has become accustomed to, if a bit weary of, the increasingly common practice of litigants presenting superficial argument on a motion, suffering an adverse ruling, and only then deciding to address the issue seriously.[4] Clarke

---

2. Lowe's has recently been dismissed without prejudice on joint stipulation of the parties. (Doc. 32).

3. While *Mays* and *Wilchombe* involved post-judgment motions under Rule 59(e), courts within this Circuit have often applied these principles to pre-judgment motions to reconsider. *E.g.*, *Busby v. JRHBW Realty, Inc.*, 642 F.Supp.2d 1283, 1286–87 (N.D.Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation, Inc.*, 2008 WL 4459085 at *2 (M.D.Fla.2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D.Ala. 2007); *Summit Medical Center, Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D.Ala.2003). This is only sensible, since allowing parties

to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context. *E.g.*, *Gipson*, 511 F.Supp.2d at 1185 (even pre-judgment, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly").

4. *E.g.*, *Equal Employment Opportunity Commission v. Jack Marshall Foods, Inc.*, Civil Action No. 09–160–WS–M, Doc. 87, 2010 WL 55635 (January 4, 2010); *Dyas v. City of Fairhope*, 2009 WL 5062367 (S.D.Ala.2009); *Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 4898354 (S.D.Ala.2009); *Board of Water and Sewer Commissioners v.*

does this day-late-and-dollar-short approach one better; while most movants on motion to reconsider actually, though ineffectually, weigh in on the underlying motion while it is pending, Clarke chose to remain silent, filing nothing in support of the plaintiffs' motion to remand. It does not on motion to reconsider seek to improve on its initial, deficient briefing, but instead injects itself into the issue for the first time only after receiving what it deems an unfavorable decision. Clarke had every opportunity to be heard before the Court's ruling but simply elected to forego it. Indeed, Clarke admits that it "made a mistake by failing to join in the plaintiffs' Motion to Remand or to make such a motion independently. . . ." (Doc. 20 at 2). Its neglect does not furnish grounds to ignore the tight parameters of a motion to reconsider.[5]

 Whirlpool argues that the plaintiffs' motion to reconsider comes too late because it was not filed within the time required by Rule 59(e). (Doc. 29 at 2–3). That rule, however, applies only to motions to alter or amend a judgment. Because the Court has entered no judgment, Rule 59(e) does not apply. On the contrary, "[a] district court may reconsider and amend interlocutory orders at any time before final judgment." *Harper v.*

---

*Alabama Department of Transportation,* 2009 WL 2230815 (S.D.Ala.2009); *Nicholson v. City of Daphne,* 2009 WL 2045152 (S.D.Ala. 2009); *Carstarphen v. Deutsche Bank National Trust Co.,* 2009 WL 1537861 (S.D.Ala.2009); *Young v. City of Gulf Shores,* 2009 WL 321221 (S.D.Ala.2009).

5. However, because the motions to reconsider address subject matter jurisdiction, the Court addresses all of the arguments presented, even though most are untimely raised. *See Carstarphen,* 2009 WL 1537861 at *2 n. 5.

6. *E.g., Aldana v. Del Monte Fresh Produce, Inc.,* 578 F.3d 1283, 1287 n. 2 (11th Cir. 2009); *Stevens v. Battelle Memorial Institute,*

---

*Lawrence County,* 592 F.3d 1227, 1231 (11th Cir.2010); *accord Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1315 (11th Cir.2000) (Rule 59 does not apply to interlocutory orders).

 Whirlpool also argues that the plaintiffs' motion to reconsider is precluded because, before filing it, the plaintiffs have filed a motion (still pending) for leave to take an interlocutory appeal from the order denying remand and thus have "already selected [their] remedy." (Doc. 29 at 3). The defendants cite no authority for the unlikely proposition that a litigant cannot pursue both courses, and the Court's brief research indicates that the Eleventh Circuit has repeatedly noted the practice without condemning it.[6]

## I. Amount in Controversy.

Clarke asserts that the Court made "manifest errors of law" in concluding that a claim under Alabama law for the wanton taking of a human life places more than $75,000 in controversy. (Doc. 20 at 1). It relies for this proposition on two district court cases, (*id.* at 7–9), but the Court previously examined these cases and found them to inaccurately state Alabama law. (Doc. 17 at 6–7). Clarke does nothing to show that the Court's conclusion was wrong, much less manifestly so.[7]

---

561 F.3d 1200, 1201 (11th Cir.2009); *Atlantic Sounding Co. v. Townsend,* 496 F.3d 1282, 1284 (11th Cir.2007); *Moorman v. UnumProvident Corp.,* 464 F.3d 1260, 1264 (11th Cir. 2006).

7. The point of Clarke's argument is less than clear. It cites the district court cases for the proposition that the amount of punitive damages in an Alabama wrongful death case must be based exclusively on the wrongfulness of the defendant's conduct, yet it concedes that the Court's contrary conclusion—that the amount of punitive damages is also overtly tied to the sanctity of human life and the enormity of wrongly taking it—"may not have been clearly erroneous." (Doc. 20 at 9).

Clarke also argues that it is impossible to show more than $75,000 in controversy absent affirmative "evidence" of the defendants' culpability. (Doc. 20 at 9–10; Doc. 31 at 11–12). Clarke misapprehends the jurisdictional analysis as it pertains to the amount in controversy. The question is not whether the plaintiffs will in fact prevail or recover damages exceeding $75,000 but whether the amended complaint places that amount in controversy. *E.g., Louque v. Allstate Insurance Co.,* 314 F.3d 776, 782 (5th Cir.2002).[8] As the Court previously ruled, wantonly causing the death of a human being, which is what the amended complaint alleges, places more than $75,000 in controversy.[9]

The plaintiffs argue that Alabama's pattern jury charges do not address the preciousness of human life and conclude that, "from a practical perspective," juries therefore consider only the wrongfulness of the defendant's conduct in assessing the amount of punitive damages. (Doc. 27 at 4). In fact, the pattern charge states that wrongful death damages are "imposed for the preservation of human life and as a deterrent to others to prevent similar wrongs." Alabama Civil Pattern Jury Instruction 11.18.[10] It is reversible error to instruct the jury only as to the punitive purpose of wrongful death damages without also telling them of the deterrent purpose of such damages. *Ayres v. Lakeshore Community Hospital,* 689 So.2d 39, 41 (Ala.1997). While the punitive purpose of wrongful death damages focuses on the wrongfulness of the defendant's conduct, the deterrent purpose focuses on the need to preserve human life. *Id.; Estes Health Care Centers, Inc. v. Bannerman,* 411 So.2d 109, 113 (Ala.1982) ("[T]he amount of an award of punitive damages may be measured by . . . the need to deter similar wrongs [defined as "the wrongful taking of human life"] in order to preserve human life.").

Moreover, and as discussed in the Court's previous order, in closing argument lawyers properly may, and typically do, stress the value of human life. *E.g., Atkins v. Lee,* 603 So.2d 937, 942 (Ala. 1992) (agreeing that "the intrinsic value of life is the proper subject for argument"). In *Estes,* the lawyer properly argued, "How valuable and how precious is a human life? . . . Would any amount of money suffice for those lives [of the Iranian hostages]? . . . [A]nd I submit to you that the life that [the decedent] had during his lifetime was worth as much to him as mine is to me and any other individual in the world is to them." 411 So.2d at 112–13. In light of the actual language and meaning of the pattern charge, especially as amplified by judicially sanctioned jury argument, it is untenable to suggest that Alabama juries as do not consider the value of human life in assessing wrongful death damages.

## II. Fraudulent Joinder.

As set forth in the Court's previous order, the only allegations of the amended complaint as to Clarke are that it failed to properly operate, maintain and inspect the electrical distribution lines, distribution transformer, overhead service entrance ca-

---

8. "[W]hen determining the amount in controversy for diversity purposes, a federal court need not pre-try the sufficiency of the plaintiff's complaint. . . . Thus, the question before us is whether the complaint, fairly read, states a claim exceeding $75,000," assuming "[a] successful result for [the plaintiff] on the merits of her claims. . . ." *Id.*

9. Clarke seems to think it important that is a products liability case. (Doc. 20 at 9–10; Doc. 31 at 5–6). It isn't. What matters is that the complaint alleges the defendants wantonly took the decedents' lives.

10. The plaintiffs quote the entire pattern charge but inexplicably omit this key language. (Doc. 27 at 4).

ble, meter box and meter set servicing the plaintiffs' home and failed to provide proper and adequate over-current and surge protection to these components of Clarke's delivery system. Because the plaintiffs sued Clarke without a shred of evidence that any of these components experienced a surge or otherwise failed, and because they sued Clarke without first performing an inquiry into these matters that was reasonable under the circumstances, the Court ruled that Clarke was fraudulently joined.

Clarke argues, obscurely, that fraudulent joinder does not exist if the plaintiff's claim may be warranted by "a nonfrivolous argument for the extension, modification, or reversal of existing law." (Doc. 20 at 6; Doc. 31 at 2, 3–4). The Court can detect nothing tying this proposition to the circumstances of this case. The Court's finding of fraudulent joinder was not based on a determination that Alabama law precludes liability for an electrical supplier's fault in operating, maintaining and inspecting its equipment or protecting it from surge, nor have either the plaintiffs or Clarke identified any legal argument for extending, modifying or reversing any existing Alabama law.

Clarke appears to argue—again, obscurely—that fraudulent joinder can occur only if the plaintiff's claim against the resident defendant is legally impossible, not if it is legally possible but factually unsupported. (Doc. 20 at 5–6; Doc. 31 at 4). The suggestion is wrong. In *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir.2005), the plaintiffs sued a nonresident manufacturer and several of its resident sales representatives in connection with the sale of the drug Redux, accusing the representatives of negligent misrepresentation. The defendants presented evidence that one of the representatives had never sold Redux,

and the plaintiffs offered no evidence to the contrary. *Id.* at 1321. The Court acknowledged that Alabama law allows a sales representative to be held liable for negligent representation, but it nevertheless held that the representative was fraudulently joined because, "[w]ith no evidence that [the representative] had anything to do with Redux, there is no reasonable possibility that Plaintiffs can establish a cause of action against him for negligent misrepresentation under Alabama law." *Id.* at 1324.

On motion to remand, the plaintiffs argued that, based on the affidavit of their expert, they have evidence that Clarke negligently supplied electricity to the plaintiffs' home, which had signs of inadequate and dangerous wiring visible from the meter box. The Court found this argument insufficient to avoid fraudulent joinder, because the amended complaint is utterly silent about any such basis of liability. The plaintiffs accept that they cannot avoid fraudulent joinder based on a claim they did not assert, but they argue the Court should have found that the amended complaint is "broad enough to encompass the claim that Clarke–Washington negligently supplied electricity to a home with dangerous wiring issues." (Doc. 27 at 3). They offer no textual demonstration how such a contorted reading of the amended complaint could be sustained, and it plainly cannot be.

## CONCLUSION

For the reasons set forth above, the motions to reconsider are **denied.**

DONE and ORDERED this 11th day of January, 2010.